**FOUR–THREE–O–SIX DUNCAN CORPORATION, Respondent,**

v.

**SECURITY TRUST COMPANY, Appellant.**

**No. 50047.**

Supreme Court of Missouri,

Division No. 1.

Nov. 11, 1963.

Armstrong, Teasdale, Roos, Kramer & Vaughan, Bourne Bean, Walter M. Clark, Donald U. Beimdiek, St. Louis, attorneys for defendant-appellant.

Hocker, Goodwin & MacGreevy, Lon Hocker, St. Louis, attorneys for respondent.

COIL, Commissioner.

Respondent, plaintiff below, filed a suit to restrain appellant Security Trust Company (hereinafter sometimes called Bank) from selling and to regain possession of certain securities which it had pledged as collateral for the performance by respondent of the provisions of a certain guaranty agreement. Bank has appealed from the trial chancel-lor's judgment ordering it to surrender to respondent the described securities. As will appear from the facts hereinafter stated, jurisdiction is in this court because the amount in dispute exceeds $15,000.

■ In our de novo review of this equity suit, we weigh the evidence and arrive at our own conclusions as to its weight, deferring to the trial chancellor's findings of fact where proper.

■ F. W. Strecker, Jr., owned and controlled respondent corporation and was the chief executive officer of F. W. Strecker Transfer Company, Strecker Motor Service, Inc., and Strecker Handling Company, hereinafter sometimes called the Strecker companies. Those companies were tenants in a building located at 4306 Duncan in St. Louis which was owned by respondent Four-Three-O-Six Duncan Corporation (hereinafter sometimes called Duncan Corporation). In 1959 Mr. Strecker and the Strecker companies were indebted to the Bank in the approximate amount of $500,-000. Duncan Corporation was organized in May 1959 for the purpose of taking title to 4306 Duncan Avenue and the Bank loaned Duncan Corporation the money with which to purchase that real estate and took a first deed of trust on the property to secure a note evidencing that indebtedness. In February 1960 Mr. Strecker obtained a loan elsewhere and out of the proceeds thereof paid the Bank the amount of its prior loan. At that time Mr. Strecker and the Strecker companies were still indebted to Bank. On February 18, F. W. Strecker, Jr., F. W. Strecker Transfer Company, Strecker Motor Service, Inc., Strecker Handling Company, and Four-Three-O-Six Duncan Corporation (respondent), as parties of the first part, and the Bank (then the Security-Mutual Bank & Trust Company), as party of the second part, executed an instrument called a "Stand-By Agreement" under the terms and provisions of which it was recited that the first parties were indebted to second party either as principal debtors or as guarantors; that the indebtedness was

overdue; that first parties desired to modify the terms as to the overdue indebtedness and, consequently, first parties agreed that Mr. Strecker would pledge his entire stock interest in Duncan Corporation with second party (under the same terms as certain other stock was held under a prior agreement, the details of which are unimportant here); that beginning February 22, 1960, they would pay to second party $1,000 each week to be applied on the principal indebtedness of first parties, and second party agreed that it would not call any of the present indebtedness of any of the first parties because of its delinquency so long as the weekly payments were made. It was further agreed that in the event of default in the weekly payments, second party had the option to terminate the stand-by agreement and, in any event, second party, in its sole discretion, could cancel that agreement with or without cause on 90-days' notice to first parties of its intention to so do.

On February 19, 1960, Duncan Corporation, by F. W. Strecker, Jr., as its president, executed a continuing guaranty agreement by which it guaranteed to Bank the prompt payment, as they might mature, of any and all loans made or which might be made to, or of any and all indebtedness then due or which might thereafter be due from F. W. Strecker, Jr., F. W. Strecker Transfer Company, Strecker Motor Service, Inc., and Strecker Handling Company. As collateral security for the performance of the obligations of that agreement and to secure the payment of any other liabilities, present or future, direct or indirect, of the Duncan Corporation to Bank, Duncan Corporation pledged collateral consisting of three promissory notes in the total face amount of $115,000 and a note for $350,000 secured by a second deed of trust on the Duncan Avenue real estate. Paragraph 6 of the continuing guaranty agreement provided as follows:

"6. Upon the maturity of any note the payment of which is hereby guaranteed or upon the maturity of any indebtedness of the undersigned, the Bank may, without notice or demand, forthwith apply any balances of any deposits of the undersigned with said Bank toward the payment of such note and of any or all of the liabilities of the undersigned to said Bank, and may likewise forthwith realize upon any property of the undersigned in its posses(s)ion and receive the proceeds therefrom, and may also, without demand, advertisement or notice, sell at public or private sale, or at any exchange or broker's board, at such prices as it may deem best, and either for cash or on credit, or for future delivery, any part or all securities or property of any kind held by it as collateral security or on which it may have a lien for the indebtedness of the undersigned as hereinabove provided, and with the right in said Bank at any such sale, public or private, to purchase the whole or any part of such securities of property so sold, free from any right or equity of redemption in the undersigned, any such right or equity of redemption being hereby expressly waived by the undersigned."

In November or December 1960, Mr. Strecker informed officers of the Bank that he desired to increase the amount of the present loan on the Duncan Avenue realty (not made or held by Bank) and inquired whether, in the event a new deed of trust and note were executed, such new deed of trust would have superiority over Bank's second deed of trust. Apparently Bank agreed to cooperate with the understanding that some portion of the cash received by Duncan Corporation as a result of the new loan would be paid Bank to be applied against existing indebtedness of the Strecker companies. Mr. Strecker proceeded under the arrangement and was able to obtain an additional $50,000 or $55,000 on a new first deed of trust and Bank, in accordance with its agreement, took a new second deed of trust securing a new $350,000 note, both dated January 10, 1961.

On that same day, January 10, 1961, a new guaranty agreement (in the same form and containing the same provisions as the prior one) was executed by Duncan Corpo-

ration, by F. W. Strecker, Jr., as president, in which the same three notes which had been pledged by the February 1960 guaranty agreement were again pledged as collateral and the new $350,000 note and second deed of trust securing it replaced the February 1960 $350,000 note and deed of trust as collateral. On the same day, January 10, 1961, the parties to the February 18, 1960, stand-by agreement executed what they called "Supplement To Stand-By Agreement Dated February 18, 1960," in which new agreement it was recited that the prior stand-by agreement was attached and made a part of the new agreement; that certain financing had been obtained by one of the parties of the first part (Four-Three–O-Six Duncan Corporation) based upon the expressed "willingness" of Bank to accept a new note and deed of trust to replace the former note and deed of trust which had been lodged with Bank as security for the performance of Duncan Corporation's prior guaranty agreement; that from the proceeds of the new loan parties of the first part were to pay Bank $20,000 on the Strecker companies' indebtedness; and that the parties desired to modify the prior stand-by agreement in certain respects. It was therefore agreed that Bank would release the note and deed of trust dated February 19, 1960, held as collateral under the 1960 guaranty agreement and would accept in its stead a new note and second deed of trust dated January 10, 1961; and first parties agreed to forthwith cause to be paid to Bank $20,000 of the proceeds of the new financing to be applied on the first parties' indebtedness; and the stand-by agreement of February 18, 1960, was modified by providing that Bank could cancel that agreement by giving 10 instead of the formerly required 90-days' notice of its intention to so do.

Paragraph 4 of said supplement to the stand-by agreement was:

"4. Except as so modified and except for the substitution of the new Note and Second Deed of Trust as collateral security under the Guaranty Agreement of Four-Three-O-Six Duncan Corporation, all of the terms and conditions of said Stand-By Agreement relating to the overdue indebtedness of Parties of the First Part to Party of the Second Part shall remain unchanged and in full force and effect, and said Stand-By Agreement is ratified and affirmed in all respects."

By the first part of 1962, Mr. Strecker and the Strecker companies were in default in the required $1,000 weekly payments and, by April 1962 they owed the Bank in excess of $300,000. On April 25 the Bank mailed the following letter addressed to F. W. Strecker, Jr., F. W. Strecker Transfer Co., Strecker Motor Service, Inc., and Strecker Handling Company:

"Pursuant to the terms of Stand-By-Agreement, dated February 18, 1960, and a Supplement thereto, dated January 10, 1961, executed by F. W. Strecker, Jr., F. W. Strecker Transfer Co., Strecker Motor Service, Inc., Strecker Handling Co., Four-Three-O-Six Duncan Corporation and the Security Mutual Bank & Trust Company, you are hereby given notice of the undersigned's intention to cancel and terminate said agreements.

"You are further notified that Security Trust Company makes formal demand on you for the payment of any and all indebtedness and obligations, plus interest, owing by you to Security Trust Company, which debts have long been delinquent and overdue and the repayments of which have been in default."

Appellant's evidence was that it also mailed to respondent Duncan Corporation the following letter:

"Pursuant to the terms of Stand-By Agreement, dated February 13, 1960, and a Supplement thereto, dated January 10, 1961, executed by F. W. Strecker, Jr., F. W. Strecker Transfer Co., Strecker Motor Service, Inc., Strecker Handling Co., Four-Three-O-Six Duncan Corporation, and the Security-Mutual Bank & Trust Company, you are hereby given notice of the under-

signed's intention to cancel and terminate said agreements.

"You are further notified that Security-Trust Company makes formal demand on you for the payment of the obligations and indebtedness, including interest, which have been guaranteed by you and which have been long delinquent and overdue and the repayments of which have been in default. If payment is not received by Security Trust Company within ten (10) days from the receipt of this letter, foreclosure will be made under your Guarantee Agreement, dated January 10, 1961. We are enclosing a copy of a Notice of Sale of Pledged Securities, which is self-explanatory and which will be duly published."

Respondent's evidence was to the effect that the above-quoted letter was never received by it. While it may be of no decisive importance, nevertheless we are of the opinion that the evidence compels the conclusion, and we so find, that F. W. Strecker, Jr., president of respondent corporation, read the above-quoted letter on April 24 when he was called into Bank's offices to be notified in advance that the letters (one addressed to Strecker and the Strecker companies, the other to the Duncan Corporation) were to be mailed the next day.

The basic premise for the trial chancellor's judgment ordering Bank to surrender to respondent the collateral heretofore described which had been pledged by Duncan Corporation under its 1961 guaranty agreement, was the first of three declarations of law, which was:

"1. All of the preceding agreements, written and oral, between plaintiff and defendant were merged into the agreement between plaintiff and defendant and others dated January 10, 1961 (Plaintiff's Exhibit 3)."

In the second declaration the trial chancellor stated that by "its letter of April 25, 1962 (Plaintiff's Exhibit 1), defendant cancelled and terminated all of such merged agreements."

Appellant contends the trial court erred in holding that there was a merger of all agreements, including the 1961 guaranty agreement, by reason of or into the supplemental stand-by agreement of January 10, 1961, while respondent, of course, contends that the trial court properly so declared the law and, consequently, correctly entered the judgment heretofore noted.

It is our view that for the reasons hereinafter stated the evidence does not support the judgment entered by the trial chancellor.

It is entirely clear to us, upon an examination of the documents in evidence and the testimony relating to the circumstances under which those documents were executed, that the stand-by agreement of February 18, 1960, as supplemented on January 10, 1961, and the second guaranty agreement executed by respondent Duncan Corporation on January 10, 1961, were separate and distinct documents intended to accomplish and executed for the purpose of accomplishing different objectives; that the guaranty agreement was not unified with or merged into the stand-by agreement and consequently a cancellation and termination of the stand-by agreement did not cancel or terminate the guaranty agreement. Our review convinces us that the documents, standing alone, require that conclusion and that the testimony in the case supports only that conclusion. Indeed, were it not for the fact that the trial chancellor reached a contrary result and that respondent's able counsel vigorously insists on the correctness of the judgment entered, we should believe the foregoing statement of facts alone was sufficient to conclusively demonstrate that Bank was entitled to cancel and terminate the stand-by agreement as modified and to proceed under the terms and provisions of the January 1961 guaranty agreement. We shall, nevertheless, examine in detail respondent's position and the specified reasons therefor as they appear in its brief.

Respondent states: "The facts in the instant record show positively that it was the

intention of the parties on January 10, 1961, to enter into a single new agreement between the bank on the one hand, and the 'Parties of the First Part,' including respondent, on the other, merging all the previous obligations of the parties respecting the maturity of the existing indebtedness of the bank's principals, and the guaranty and collateralization thereof. This intention appears from several sources."

To demonstrate that "intention" respondent suggests four sources.

First, that the testimony of Bank's officers who handled the transactions with Mr. Strecker, the Strecker companies, and Duncan Corporation, demonstrates "the documents signed January 10, 1961, were drawn to effectuate one single oral agreement." The only documents to which respondent, appellant, Mr. Strecker, and the Strecker companies were parties and which were signed on January 10, 1961, were two, a supplement to the February 18, 1960, stand-by agreement modifying and incorporating the 1960 agreement, and a new guaranty agreement signed by Duncan Corporation replacing the one signed in 1960. The officers' testimony to which respondent points was to the effect that the new $350,000 note and the deed of trust securing it, the supplement to the stand-by agreement, and the new guaranty agreement all bore the date of January 10, 1961; that there had been a verbal agreement (prior to the execution of those documents) between the Bank and Mr. Strecker that Duncan Corporation was to pay Bank $20,000 to be applied on the Strecker indebtedness; that the documents had been drawn in advance; that the Bank's officers probably had told Strecker that he would have to sign some new papers and that the Bank would prepare them; and that the arrangements agreed upon were that a new deed of trust and new note would be executed by Duncan Corporation and deposited with Bank, that a new guaranty agreement would be executed by the Duncan Corporation and that a supplement to the stand-by agreement would be executed. The oral arrangements concerning which

the Bank officers testified all became parts of one or the other of the two written agreements signed by the parties on January 10, 1961.

It seems clear to us that the only reasonable conclusion from the foregoing testimony is that in order to accomplish the thing Mr. Strecker suggested and wanted to do, the prior stand-by agreement had to be supplemented and executed by the parties who were signatory to the prior stand-by agreement, and a new guaranty agreement had to be executed by respondent in order to satisfy the Bank. We see nothing in that testimony which indicates or even suggests that the parties intended that the stand-by agreement as supplemented included the new guaranty agreement so that a termination of the stand-by agreement as supplemented included a cancellation and termination of the guaranty agreement.

Secondly, respondent argues that the supplement to the stand-by agreement treated "the guaranty agreement as consideration for and a part of the stand-by agreement," and, in support thereof, respondent calls attention to the fact that Duncan Corporation was a party to both the 1960 stand-by agreement and the 1961 supplement thereto and that both those agreements were specifically terminated by the Bank's letter to Mr. Strecker and the Strecker companies dated April 25, 1962. Respondent next points out that the supplement to the stand-by agreement contained a "whereas clause" noting that financing had been obtained by one of the first parties (obviously Duncan Corporation) conditioned upon Bank's willingness to accept a new note and second deed of trust to replace the one then pledged under the prior (1960) guaranty agreement and that paragraph 4 of the supplement to the stand-by agreement was:

"4. Except as so modified [the modification referred to is the change from the 90-day to 10-day notice of intent to cancel] and except for the substitution of the new Note and Second Deed of Trust as collateral security under the Guaranty Agreement

of Four-Three-O-Six Duncan Corporation, all of the terms and conditions of said Stand-By Agreement relating to the overdue indebtedness of Parties of the First Part to Party of the Second Part shall remain unchanged and in full force and effect, and said Stand-By Agreement is ratified and affirmed in all respects." (Bracketed insert ours.)

Respondent then asks the question, "If the guaranty agreement and the collateral deposit thereunder are not a part of the agreement [referring to the stand-by agreement as supplemented], why did the contracting parties agree that *except* for changes in the former, the latter would remain unchanged?" If we understand correctly, respondent's point is that the supplement to the stand-by agreement, by referring to the fact that a new note and a new deed of trust were to be substituted for the old as collateral security under the Duncan Corporation's new guaranty agreement, demonstrated that the parties intended that the new guaranty agreement was to be an integral part of the stand-by agreement as supplemented. We see no merit in that contention. It is true that the 1960 stand-by agreement did not refer to the 1960 guaranty agreement and, consequently, the fact that a new deed of trust and note were being substituted as security under the new guaranty agreement was not a "change" in "the terms and conditions" of the 1960 stand-by agreement; but we do not understand how, and respondent does not suggest how, the inclusion of that reference in the supplement to the stand-by agreement could have accomplished a merger of the separate guaranty agreement into the stand-by agreement nor how such a reference could have evidenced or suggested that the parties intended that the new and separate 1961 guaranty agreement was to be unified with or merged in the stand-by agreement as supplemented.

Respondent next suggests that because the evidence did not show that the 1960 guaranty agreement was cancelled, Bank's purported letter notice to the Duncan Corporation of foreclosure under the 1961 guaranty agreement showed that Bank must have treated the 1960 guaranty agreement as merged into the 1961 guaranty agreement. There can be no question but that the 1961 guaranty agreement superseded the 1960 guaranty agreement and made such prior agreement ineffective; but that fact has no probative force or relevance to support the conclusion that the separate 1961 guaranty agreement was merged into the 1961 stand-by agreement.

Respondent's final argument in support of its contention that the parties intended to merge all agreements into the stand-by agreement is that the letter of cancellation sent to Mr. Strecker and the Strecker companies "itself belies the intent claimed for it," i. e., that it cancelled only the stand-by agreement and the supplement thereto. Respondent says that Bank could have foreclosed on the collateral (pledged under the 1961 guaranty agreement) under the provisions of the stand-by agreement but that Bank, nevertheless, chose to exercise its right under the stand-by agreement to "cancel and terminate said agreements" only (said agreements referred to the 1960 stand-by agreement and the 1961 supplement thereto). But the stand-by agreement as supplemented provided that upon default in the weekly payments the *stand-by* "agreement shall be null and void." There were no specific provisions in the stand-by agreement for foreclosure of the collateral which had been pledged under the guaranty agreement. The provisions for foreclosure of the collateral were, of course, in the guaranty agreement (paragraph 6 heretofore quoted). Thus, it seems apparent that the Bank would proceed under the terms of the guaranty agreement to foreclose on collateral deposited under that agreement, and the fact that its letter to Mr. Strecker and the Strecker companies cancelled and terminated only the stand-by agreement and the supplement thereto has no significance on the question of "merger." On the contrary, such action indicated clearly that the Bank was not treating the guaranty agreement as a part of the stand-by agreement.

As we see it, and as respondent contends, the stand-by agreement as supplemented, the 1961 guaranty agreement, the new note and deed of trust, the $20,000 payment to the bank, were all parts of one transaction. But we see no basis, sound or otherwise, for the contention that thereby there was only one contract and consequently the guaranty agreement was merged in or unified with the stand-by agreement and therefore notice to cancel the stand-by agreement at the same time cancelled the guaranty agreement.

The rule relied upon by respondent, that separate instruments executed at the same time and relating to the same subject may be considered together and may be construed as one contract (if it has any application where a "merger" is claimed), is a rule employed only for the purpose of giving effect to the intention of the parties; and that rule is not applied arbitrarily and without regard to the realities of the situation, 17A C.J.S. Contracts § 298, pp. 132, 133; Miles v. Martin, Tex., 321 S.W.2d 62, 65 [2]; Huyler's v. Ritz-Carlton Restaurant & Hotel Co. of Atlantic City (Del. Dist. Ct.), 1 F.2d 491, 492 [1, 2]; e. g., when to so do would be contrary to the intention of the parties and would, in fact, "avoid an essential part of the contract," 12 Am.Jur., Contracts, § 246, pp. 783, 784; Gerdes v. Omaha Home for Boys, 166 Neb. 574, 89 N.W.2d 849, 856 [10]. Consequently, even though several instruments relating to the same subject and executed at the same time should be construed together in order to ascertain the intention of the parties, it does not necessarily follow that those instruments constitute one contract, Malmstedt v. Stillwell, 110 Cal.App. 393, 294 P. 41, 42 [1], or that one contract thereby was merged in or unified with another, 17A C.J.S. Contracts § 298, pp. 132, 133. Thus, as a minimum prerequisite to any correct holding that one contract has been merged in or unified with another by reason of the fact that several documents relating to the same subject were executed on the same date, there must be some reasonable basis for finding that the parties so intended. Porterfield v. American Surety Co. of New York, 201 Mo.App. 8, 210 S.W. 119, 124.

There is no evidence in this case to indicate that the parties intended that the separate 1961 guaranty agreement executed by Duncan Corporation was extinguished and absorbed into the stand-by agreement as supplemented. The very fact that a separate guaranty agreement was executed belies any such intention. That must be true because a guaranty contract is by its very nature a separate, independent agreement "which imposes different responsibilities than those imposed in the contract to which it is collateral." Kelly-Springfield Tire Co. v. Hamilton, 230 Mo.App. 430, 91 S.W.2d 193, 195 [1]; Ireland v. Shukert, 238 Mo. App. 78, 177 S.W.2d 10, 14 [5, 6]; Squires v. Hoffman, Mo.App., 278 S.W. 803, 804 [3, 4]. "A contract of guaranty, being a collateral engagement for the performance of an undertaking of another, imports the existence of two different obligations, one being that of the principal debtor and the other that of the guarantor." 24 Am.Jur., Guaranty, § 4, p. 875.

We hold, therefore, that Bank's letter of April 25, 1962, to Mr. Strecker and the Strecker companies did not cancel and terminate any agreements in question other than the February 10, 1960, stand-by agreement and the January 10, 1961, supplement thereto; that, consequently, said above-mentioned letter did not cancel or terminate the Duncan Corporation's January 10, 1961, guaranty agreement.

It follows that the judgment is reversed and the case is remanded with directions to enter judgment for defendant-appellant.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.