Clarence E. JOHNSON on Behalf of
Anita JOHNSON, Deceased,
Respondent,

v.

JF ENTERPRISES, LLC, and Jeremy
Franklin, Appellants.

No. SC 92539.

Supreme Court of Missouri,
En Banc.

June 11, 2013.

Opinion Modified on Court's Own
Motion July 16, 2013.

Patric S. Linden and Kevin D. Case, Case & Roberts PC, Kansas City, for dealership and its president.

Joseph M. Backer, The Backer Law Firm LLC, Independence, for Johnson.

LAURA DENVIR STITH, Judge.

Jeremy Franklin and JF Enterprises LLC appeal the trial court's overruling of their motion to compel arbitration based on their claim that a dispute involving the purchase of a vehicle from JF Enterprises is controlled by the arbitration agreement to which they claim the buyer agreed at the time of sale. The trial court overruled the motion because it found that the installment contract, signed at the same time as the arbitration agreement, does not refer to or incorporate the arbitration agreement and contains a merger clause stating that it contains the parties' entire agreement as to financing. It found that the arbitration agreement, therefore, had no application to the disagreements over financing that are the subject of the lawsuit.

This Court reverses. As a part of the sales transaction, the purchaser signed numerous documents at a single sitting, including the sale agreement, the installment contract containing a merger clause, an arbitration agreement and numerous other documents. Contrary to the parties' arguments, contemporaneously signed documents will be construed together and harmonized if possible. Only if documents cannot be harmonized will inconsistent provisions be construed against the drafter.

Here, the merger clause merged prior oral agreements and prior oral or written commitments "to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt." The separately titled "arbitration agreement" is a dispute resolution agreement, not an additional financing document. It does not contain an agreement to loan money, extend credit and so forth. It can be harmonized, therefore, with the installment contract and is not voided by operation of the merger clause. The trial court erred in determining otherwise. Reversed and remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 23, 2007, Anita Johnson purchased a new 2008 Suzuki XL–7 sport utility vehicle from Jeremy Franklin's Suzuki of Kansas City, Missouri. The dealership is operated by JF Enterprises, a limited liability company organized in Missouri. Ms. Johnson asserts that she visited the dealership after seeing television and direct mail advertisements in which the dealership claimed that customers could purchase a new vehicle for less than $100 a month and then return the vehicle to the dealership within 10 to 12 months in exchange for another new vehicle at the same low monthly rate.

After allegedly receiving assurances from dealership salespersons that the offer was legitimate and that the loan balance on the vehicle would be paid off by the dealership when she traded it in for a new vehicle, Ms. Johnson arranged to purchase the Suzuki for $39,396.95. Ms. Johnson financed the purchase, executing a retail installment contract that obligated her to make 75 monthly payments of $762.32. According to Ms. Johnson, the dealership told her that it would refund to her the difference between the monthly amounts due under the installment contract and the low monthly payments promised by the dealership. The agreement contained a merger clause that said:

> Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

In addition to the installment contract, Ms. Johnson signed what her petition describes as "a pile of documents," among which was a one-page arbitration agreement that Ms. Johnson has no memory of seeing. The arbitration agreement requires that all disputes arising out of or relating to the credit application, purchase or condition of the vehicle, the purchase or financing contract, or any resulting transaction or relationship would be resolved, at Ms. Johnson's or Franklin's election, by binding arbitration and not court action.

Ms. Johnson states that, in fact, she did receive a check in the amount of $7,956 from the dealership after her purchase of the vehicle. Ms. Johnson used these funds to make the monthly payments required by the installment contract. But, when the funds were exhausted, she claims the dealership told her that she was no longer part of the promotional program and that she was responsible for paying the entire remaining loan amount.

In December 2010, Ms. Johnson sued the dealership and its president, Jeremy Franklin (collectively "Franklin"), and the vehicle manufacturer, American Suzuki Motor Corporation, in the Jackson County circuit court, claiming negligent misrepresentation. She also brought a claim of violation of the Missouri Merchandising Practices Act (MMPA) against American Suzuki only and a claim of general negligence against the dealership only.

Relying on the arbitration agreement, Franklin (but not American Suzuki) moved the circuit court to compel arbitration of Ms. Johnson's negligence and negligent misrepresentation claims. Ms. Johnson opposed the motion on the basis that the installment contract does not include an arbitration agreement or refer to the separate arbitration agreement. Further, it contains a merger clause stating, she claimed, that the installment contract sets forth the entire agreement between the parties. Therefore, she asserted, the separate arbitration agreement could not apply to the installment contract.

The trial court agreed with Ms. Johnson, overruling Franklin's motion to compel arbitration. This Court granted transfer pursuant to art. V, sec. 10 of the Missouri

Constitution after opinion by the court of appeals.[1]

## II. STANDARD OF REVIEW

■ The question whether Franklin's motion to compel arbitration should have been granted is one of law, to be decided by this Court *de novo*. *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 774 (Mo. banc 2005).

## III. ANALYSIS

### A. Contemporaneously Signed Documents Will Be Construed Together to Determine the Parties' Intent

■ Ms. Johnson asks this Court to give effect to the merger clause and find that the installment contract contains the entire agreement of the parties as to the purchase of the vehicle. The merger clause declares:

> **Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt** *including promises to extend or renew such debt* are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, **any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us,** except as we may later agree in writing to modify it."

(Emphasis added).

While this Court has not addressed the matter directly, prior court of appeals cases provide that, although the presence of a merger clause does not establish absolutely that a writing is a complete and final agreement, a merger clause should be given great weight and aids the court in determining whether the writing is the final expression of all terms agreed upon. *CIT Group/Sales Fin. Inc. v. Lark*, 906 S.W.2d 865, 868 (Mo.App.1995) ("The existence of a merger clause is a strong indication on the face of a contract that the writing is intended to be complete"); *Jake C. Byers, Inc. v. J.B.C. Investments*, 834 S.W.2d 806, 813 (Mo.App.1992) (a merger clause is a strong indication the writing is intended to be complete although "its existence is not necessarily determinative.").

Ms. Johnson argues that the merger clause language that "this writing" is the "complete and exclusive statement of the agreement of the parties" means that no other documents signed with the installment contract have any effect as all are merged into the installment contract through this all-inclusive merger clause. The dissent also urges the Court to take this view. In support, Ms. Johnson cites *Krueger v. Heartland Chevrolet, Inc.*, 289 S.W.3d 637 (Mo.App.2009). In *Krueger*, a vehicle buyer signed a retail installment contract containing the same merger clause language as the installment contract that Ms. Johnson signed. *Krueger* concluded that the merger clause in the installment contract served to supercede the contemporaneously signed retail buyers order and its accompanying arbitration addendum, making the retail installment contract the *entire* agreement of the parties. *Id.* at 639.

This argument goes too far. While the record in this Court does not show exactly what other documents Ms. Johnson signed when she bought the vehicle, Ms. Johnson agrees that she was given "a pile" of documents to sign. These documents necessarily included the sales contract and such legally required documents as the odometer disclosure statement and consumer

---

1. Anita Johnson died during the pendency of this appeal. On June 3, 2013, upon motion, this Court ordered substitution of Clarence Johnson, pursuant to Rule 52.13.

remedies information, *see, e.g.,* §§ 407.536., 407.573, RSMo 2000, in addition to the installment contract and arbitration agreement at issue here. The installment contract does not refer to or incorporate any of these other documents. To accept the dissent's argument and interpret the merger clause to make the installment contract the total contract of the parties would preclude giving effect to these other contemporaneously signed papers. It is not reasonable to interpret the merger clause to negate the existence of the purchase itself, any warranties or disclosures given or made, and the other matters set out in these documents.

Franklin's countervailing argument also goes too far, however. Franklin admits that the installment contract does not contain an arbitration provision or refer to an arbitration agreement but argues that the arbitration agreement is a later modification of the contract because it was further down in the "pile" of documents Ms. Johnson signed than was the financing agreement. Therefore, Franklin argues, whatever scope is given to the merger clause, it does not apply to the arbitration agreement because the merger clause by its terms provides that the installment contract is the complete and exclusive agreement of the parties only "except as we may later agree in writing to modify it." It says that each paper further down in the pile than the installment contract should be considered such as "later modification."

Ms. Johnson denies that she signed the installment contract before the arbitration agreement, stating a Franklin employee provided her with a number of documents to sign and that she signed them one after the other in no particular order.

The parties are incorrect in suggesting that the order in which the documents were placed by the parties in the pile of documents affects the enforceability of the merger clause or the arbitration agreement. The one issue on which the parties agree is that Ms. Johnson signed the installment contract and the arbitration agreement within minutes of each other, in a single sitting, as part of a single sales transaction.

■ Franklin ignores the line of cases that makes the dispute as to whether the installment contract was signed before or after the arbitration agreement immaterial when several instruments relating to the same subject are executed at the same time. In such a case, *the documents will be construed together,* even in the absence of explicit incorporation, unless "the realities of the situation" indicate that the parties did not so intend. *Martin v. U.S. Fidelity Corp.,* 996 S.W.2d 506, 510–11 (Mo. banc 1999) (all documents signed together will be construed together regardless whether they are one contract); *Four–Three–O–Six Duncan Corp. v. Sec. Trust Co.,* 372 S.W.2d 16, 23 (Mo.1963) (even though parties signed two agreements contemporaneously, they did not intend that cancellation of one would cancel the other).[2] Whether or not the documents are treated as a single contract depends on the intent of the parties, but even where not part of a single contract, courts will consider the instruments together to determine the parties' intent.

**2.** *See also Boulds v. Chase Auto Fin. Corp.,* 266 S.W.3d 847, 851 (Mo.App.2008) (construing retail installment contract—which did not contain a merger clause—together with arbitration agreement to uphold case's dismissal from court); *compare Berry v. Crouse,* 376 S.W.2d 107, 112–13 (Mo.1964) (when parties signed a sales agreement and then several hours later signed a contradictory lease agreement, the latter prevailed and determined rights and liabilities of parties).

*Four–Three–O–Six,* 372 S.W.2d at 23 (Mo. 1963).

### B. The Arbitration Agreement and Merger Clause Can be Harmonized

■ The order in which documents are signed is irrelevant where, as here, the circumstances demonstrate that they were part of a single transaction. Under the general rule that contemporaneously signed documents relating to one subject matter or transaction are construed together, the parties intended to give effect to all the documents Ms. Johnson executed in her purchase of the vehicle. Because there is no evidence of contrary intent, this Court considers the purchase documents together to determine the parties' intent as to the scope of the merger clause and of the arbitration agreement.[3]

The merger clause states:

Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to *modify it.*

The plain language of the merger clause states that the installment contract ("this writing") merges and contains the full agreement of the parties as to prior oral agreements or oral or written commitments that pertain to the loaning of money, extending credit and forbearing enforcing repayment of a debt except as the parties "later agree in writing." It does

not state it applies to contemporaneously signed documents contained in the "pile" of documents presented to Ms. Johnson to sign at the same sitting.

One of those other documents in the pile was the arbitration agreement. An arbitration agreement is not an agreement to loan money, extend credit or forbear from enforcing repayment or promise to extend or renew debt. It is a dispute resolution clause. In this case, it applied to all aspects of the parties' relationship, stating in relevant part:

*Any claim or dispute, whether in contract, tort, statute or otherwise* (including the scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, *which arise out of or relate to your credit application, purchase or condition of this vehicle, your purchase or financing contract or any resulting transaction or relationship. . . .*

By its terms, the arbitration clause applies to disputes of all types, including those over financing. This does not make it a financing clause, but it does mean that disputes over financing must proceed to arbitration if the arbitration clause is enforceable.

■ This interpretation of the merger and arbitration clauses is consistent with the language of those clauses and with the purpose of the merger doctrine. Merger clauses are express statements of the merger doctrine and are intended to prevent extrinsic evidence of other agreements from influencing the interpretation of a final written contract, preserving the sanctity of written contracts. *Jake C. Byers, Inc. v. J.B.C. Investments,* 834

---

**3.** There is no claim that all of the other documents were signed first and the transaction complete and then the arbitration agreement was signed after a period of delay as a modification of the previous contract.

S.W.2d 806, 811–12 (Mo.App.1992). Therefore, a written agreement may not be varied or contradicted by evidence of extrinsic agreements. *Id.* This rule is substantive, and not a mere rule of evidence and any extrinsic evidence must be ignored. *Union Elec. Co. v. Fundways, Ltd.*, 886 S.W.2d 169, 170 (Mo.App.1994).

In this case, the intent of the parties is demonstrated by all the documents the parties signed contemporaneously. To protect the sanctity of the parties' written contract, all the provisions in the writings can and should be harmonized and given effect, including a valid arbitration agreement. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). To the extent that *Krueger*, 289 S.W.3d at 639, is inconsistent with this determination, it no longer should be followed.

Ms. Johnson also asks this Court to hold that the arbitration agreement is unconscionable. Because of its resolution of the merger clause issue, the trial court did not reach the unconscionability question. Neither did it determine whether fraud in the inducement to contract through promises not to enforce the terms of the installment contract makes the merger clause or arbitration agreement voidable. *Wills v. Whitlock*, 139 S.W.3d 643, 651 (Mo.App. 2004) ("there are several exceptions to the merger doctrine, including fraud, accident, or mistake"); see also *James L. Hartsfield, Jr., The "Merger Clause" and the Parole Evidence Rule*, 27 Tex. L. Rev. 361, 366 (1949) ("Logically a merger clause should not be effective to preclude showing extrinsic representations amounting to fraud, since, if fraud vitiates the entire contract, it vitiates the merger clause.") Accordingly, this Court remands for further proceedings in accordance with this opinion.

## IV. CONCLUSION

For all of these reasons, this Court reverses the judgment of the trial court and remands for further proceedings.

RUSSELL, BRECKENRIDGE and FISCHER, JJ., concur.

TEITELMAN, C.J., dissents in separate opinion filed.

DRAPER, J., concurs in opinion of TEITELMAN, J.

WILSON, J., not participating.

RICHARD B. TEITELMAN, Chief Justice.

I respectfully dissent. The principal opinion holds that the installment contract merger clause is consistent with the arbitration agreement because the merger clause is a financing document while the arbitration agreement is a dispute resolution document. The merger clause specifically provides that the installment contract is the entire agreement regarding matters that arise from the loan obtained by Anita Johnson. However, the arbitration agreement, which is not referenced in the merger clause, also provides that it applies to all aspects of the transaction. Therefore, I would hold that this inconsistency creates an ambiguity that should be construed against JF Enterprises and Franklin as the drafters of the contracts.

To purchase her vehicle, Ms. Johnson was required to review and sign "a pile of documents" that included the installment contract and the one-page arbitration agreement. Ms. Johnson does not recall seeing the arbitration agreement.

The installment contract merger clause provides that:

Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt in-

cluding promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it."

The first sentence of the merger clause provides that oral agreements to "loan money, extend credit, or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable." The obvious purpose of this provision is to protect the dealership from ill-advised statements by its salespersons regarding a consumer's obligation to repay a loan.

In contrast to the clarity of the first sentence of the merger clause, the second sentence is subject to reasonable, alternative interpretations. The first clause of the second sentence re-assures the consumer that to prevent "misunderstanding ... any agreement we reach covering such matters are contained in this writing...." This language clearly provides that all loan obligations—"such matters"—are established by the installment contract. However, in the second clause, the consumer is informed that the "complete and exclusive statement of the agreement between us" consists of "this writing." A reasonable consumer, reviewing this "pile of documents" at the sales desk without legal counsel, could conclude that the installment contract conclusively establishes the parties' loan obligations. In that case, the arbitration clause is inconsistent with the merger clause because the arbitration clause also purports to apply to loan issues. However, that same consumer also could conclude that the second clause does not refer simply to "such matters" as fi-

nancing and, instead, refers broadly to the "exclusive statement of the agreement between us...." In that case, the arbitration clause is also inconsistent with the merger clause. In either case, the inconsistency should be construed against the drafter. It also should be noted that Ms. Johnson is challenging only the applicability of the arbitration clause.

While the determination of whether a contract is ambiguous is ultimately a question of law, it is also true that this legal question does not arise in a vacuum. It arises from a real world transaction—in this case, a consumer signing a series of complex legal documents with provisions that are arguably inconsistent. The inconsistency is demonstrated not only by the foregoing analysis but also by the fact that the respected trial judge in this case also reached the same conclusion following extensive arguments by counsel for both sides. How is a consumer, such as Ms. Johnson, expected to reconcile these various provisions, instantaneously and without legal counsel, while sitting in the salesperson's office when judges and lawyers cannot do so after extensive research and contemplation? Courts should consider this reality when resolving these types of cases. I would affirm the trial court's judgment.