

# In the
# Missouri Court of Appeals
## Western District

LASHIYA D. ELLIS,

        **Respondent,**

v.

**JF ENTERPRISES, LLC D/B/A
JEREMY FRANKLIN'S SUZUKI OF
KANSAS CITY,**

        **Appellant.**

**WD78075**

**OPINION FILED:**

**May 5, 2015**

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Jack Richard Grate, Judge**

**Before Division One: James Edward Welsh, P.J.,
Thomas H. Newton, and Gary D. Witt, JJ.**

JF Enterprises, LLC, doing business as Jeremy Franklin's Suzuki of Kansas City (Jeremy Franklin's Suzuki), appeals from the circuit court's order denying its motion to compel arbitration and stay proceedings in an action filed against them by Lashiya Ellis. Jeremy Franklin's Suzuki contends that the circuit court erred in denying its motion because (1) the arbitration agreement was severable and separately enforceable from the underlying contract in this case and (2) pursuant to the delegation clause in the arbitration agreement, the arbitrability of Ellis's claims was for the arbitrator and not the court. We reverse the circuit court's decision and remand for the circuit court to enter an order compelling arbitration between Ellis and Jeremy Franklin's

Suzuki and staying Ellis's suit against Jeremy Franklin's Suzuki pending a determination by the arbitrator concerning the arbitrability of Ellis's claims.

The parties agree that, on November 4, 2013, Ellis went to Jeremy Franklin's Suzuki for the purposes of purchasing a vehicle. On that date, Ellis signed a Retail Buyers Order and executed a Retail Installment Contract. According to those documents, Ellis agreed to purchase a 2012 Hyundai Sonata for $21,104.95. Further, as part of the transaction, Ellis traded in a 2003 Chevrolet Tahoe when she purchased the Hyundai Sonata.

On July 11, 2014, Ellis filed a Petition for Damages with the circuit court alleging that Jeremy Franklin's Suzuki violated the Missouri Merchandising Practices Act and made fraudulent misrepresentations regarding the delivery of title to the Hyundai Sonata purchased by Ellis. Specifically, Ellis claimed that Jeremy Franklin's Suzuki failed to deliver title to the vehicle in violation of section 301.210, RSMo 2000, and that she was unable to register the vehicle without the title. Further, Ellis filed a claim for conversion against Jeremy Franklin's Suzuki alleging that Jeremy Franklin's Suzuki unlawfully and without justification converted to its own use Ellis's vehicle that Jeremy Franklin took as a trade. Ellis also filed suit against Condor Capital Corporation (Condor Capital),[1] the entity that Jeremy Franklin's Suzuki arranged to provide the financing for Ellis to purchase the vehicle. Ellis claimed that Condor Capital violated the Missouri Merchandising Practices Act and made fraudulent misrepresentations in requiring her to continue to make payments under a void Retail Installment Contract. In regard to her claims, Ellis asked the circuit court to declare the Retail Buyers Order and Retail

---

[1]Condor Capital did not file a brief, participate in this appeal, or make any claim that it was a party to the arbitration agreement.

2

Installment Contract to be void and to rescind the transaction. She also asked the court to award her damages, punitive damages, attorney's fees, and costs.

Jeremy Franklin's Suzuki filed with the circuit court an answer to Ellis's Petition for Damages on August 20, 2014. On that same date, Jeremy Franklin's Suzuki filed a Motion to Stay Proceedings and Compel Arbitration. In that motion and the suggestions in support, Jeremy Franklin's Suzuki asked the circuit court to enforce the arbitration agreement entered into by Ellis and Jeremy Franklin's Suzuki as part of the purchase transaction. The Arbitration Agreement[2] provided:

> In this Arbitration Agreement, "you" refers to the buyer(s) signing below. "We," "us," and "our" refer to the Dealer signing below and anyone to whom the Dealer assigns this Arbitration Agreement.
>
> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, your purchase or financing contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign your purchase or financing contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Agreement shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

---

[2]Ellis acknowledges that she contemporaneously signed the arbitration agreement, the retail buyer's order, and the retail installment contract on November 4, 2013.

On October 21, 2014, the circuit court denied Jeremy Franklin's Suzuki's motion to stay proceedings and compel arbitration. The circuit court found that:

> [N]o title to the 2012 Hyundai Sonata was provided to Plaintiff Lashiya D. Ellis at the time of the sale or since, and therefore, pursuant to Section 301.210 RSMo., the contract is fraudulent and void, and . . . the arbitration provision which is to be construed with the other contract documents is subject to [Lashiya D. Ellis's] contract defenses of fraud and lack of consideration and is void, and therefore, not enforceable.

Jeremy Franklin's Suzuki appeals from the circuit court's order denying its motion to stay proceedings and compel arbitration.[3]

"The question whether [Jeremy Franklin's Suzuki's] motion to compel arbitration should have been granted is one of law, to be decided by this Court *de novo*." *Johnson ex rel. Johnson v. JF Enterprises, LLC*, 400 S.W.3d 763, 766 (Mo. banc 2013). "'A motion to compel arbitration of a particular dispute should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kohner Props., Inc. v. SPCP Group VI, LLC*, 408 S.W.3d 336, 346 (Mo. App. 2013) (citation omitted).

In its first point on appeal, Jeremy Franklin's Suzuki contends that the circuit court erred in denying its motion to stay proceedings and compel arbitration because the arbitration agreement was severable and separately enforceable from the underlying contract in this case. We agree.

The Arbitration Agreement in this case expressly provides that it be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* and not by any state law concerning arbitration. Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing

---

[3]Section 435.440.1(1), RSMo 2000, provides that "[a]n appeal may be taken from . . . [a]n order denying an application to compel arbitration."

a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA thereby places arbitration agreements on equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id*. (citation omitted).

The FAA also establishes procedures for courts to use in implementing § 2's substantive rule. *Id*. "Under § 3, a party may apply to a . . . court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Id*. "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a . . . court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Id*. "The court 'shall' order arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'"[4] *Id*.

The United States Supreme Court has recognized that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id*. at 68-69. Indeed, "arbitration is a matter of contract." *Id*. at 69. "An agreement to arbitrate a gateway issue is simply an

---

[4]In deciding arbitrable disputes, including whether a particular claim is subject to arbitration, "[a]rbitrators are expected to follow applicable law unless stated otherwise in the arbitration agreement," *Cremin v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 434 F. Supp. 2d 554, 559 (N.D. Ill. 2006), and "judicial scrutiny of arbitration awards . . . is sufficient to ensure that arbitrators comply with the requirements of the [law]." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 232 (1987).

additional, antecedent agreement the party seeking arbitration asks the . . . court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id*. at 70.

Further, the United States Supreme Court has declared that, under § 2 of the FAA, arbitration provisions are severable from a contract as a whole. *Id*. at 70-71; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006); *Kirby v. Grand Crowne Travel Network, LLC*, 229 S.W.3d 253, 254 (Mo. App. 2007). According to the United States Supreme Court:

> Challenges to the validity of arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract" can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.

*Buckeye*, 546 U.S. at 444 (internal citation omitted). In this case, Ellis's complaint is that the contract as a whole (including the arbitration agreement) became invalid because Jeremy Franklin's Suzuki failed to deliver title to the vehicle she purchased as required by section 301.210, RSMo 2000. But, according to the United States Supreme Court, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id*. at 445-46; *Kirby*, 229 S.W.3d at 254. Because Ellis challenges the contract as a whole, and not specifically the arbitration provision, the arbitration provision is enforceable apart from the remainder of the contract. Indeed, "a party's challenge . . . to the contract as a whole does not prevent a court from enforcing a specific agreement to arbitrate." *Jackson*, 561 U.S. at 70; *see also State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 857 n.1 (Mo. banc 2006) (court cited *Buckeye* for the principle that "'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance'").

6

The circuit court, therefore, erred when it concluded that the arbitration agreement was void and unenforceable because Jeremy Franklin's Suzuki failed to provide Ellis a title to the 2012 Hyundai Sonata. "[R]egardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye*, 546 U.S. at 449.

Ellis essentially requests that we ignore applicable United States Supreme Court precedent and allow the court to determine the enforceability of the underlying contract rather than the arbitrator. Indeed, Ellis cites section 301.210, RSMo,[5] and numerous cases that hold an attempt to buy or sell a motor vehicle without the delivery of a title voids the purchase contract. *See Burton v. SS Auto, Inc.*, 426 S.W.3d 43 (Mo. App. 2014); *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191 (Mo. App. 2013); *Brockman v. Regency Fin. Corp.*, 124 S.W.3d 43 (Mo. App. 2004); *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675 (Mo. App. 1984); *Public Finance Corp. of Kansas City v. Shemwell*, 345 S.W.2d 494 (Mo. App. 1961).[6] However, according to the United States Supreme Court, the fact that a contract may be void or voidable under state law does not give the courts the authority to review the underlying contract and avoid compelling the parties to arbitrate. *Buckeye*, 546 U.S. at 447-48; *Kirby*, 229 S.W.3d at 254 (a challenge to the

---

[5]Section 301.210.4 provides:

> It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in this section, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

[6]None of these cases address the severability of an arbitration provision. Ellis also relies on J*ohnson v. JF Enterprises, LLC*, 400 S.W.3d 763 (Mo. banc 2013), in support of its contention that the arbitration provision is unenforceable because the underlying contract was void to Jeremy Franklin's Suzuki's failure to deliver the title. To the contrary, the Missouri Supreme Court in Johnson overturned the denial of a motion to compel arbitration holding that a separately titled arbitration agreement between the parties was considered part of the transaction regardless of a merger clause contained in the retail installment contract. *Id*. at 764.

7

validity of the whole contract, and not specifically the arbitration clause within it, must go to the arbitrator, not the court, even if the plaintiff asserts the contract was void *ab initio*).

In *Buckeye*, customers who agreed to an arbitration clause as a condition of using Buckeye's loan service claimed that a usurious interest provision in the loan agreement invalidated the entire contract, including the arbitration clause. *Buckeye*, 546 U.S. at 443. The customers argued that § 2 of the FAA, which renders "an agreement in writing to submit to arbitration an existing controversy arising out of" a "contract" to be "valid, irrevocable, and enforceable," cannot apply to an agreement void *ab initio* under state law because it is not a contract. *Id.* at 447. The *Buckeye* court refused to read "contract" so narrowly and found:

> The word ["contract"] appears four times in § 2. Its last appearance is in the final clause, which allows a challenge to an arbitration provision "upon such grounds as exist at law or in equity for the revocation of any *contract*." There can be no doubt that "contract" as used this last time must include contracts that later prove to be void. Otherwise, the grounds for revocation would be limited to those that rendered a contract voidable--which would mean (implausibly) that an arbitration agreement could be challenged as voidable but not as void. Because the sentence's final use of "contract" so obviously include putative contracts, we will not read the same word earlier in the same sentence to have a more narrow meaning.

*Id.* at 448 (emphasis in the original). In so ruling, the *Buckeye* court recognized that the rule of severability would permit a court to enforce an arbitration agreement in a contract that an arbitrator may later find void. *Id.* The *Buckeye* court, however, noted that it was "equally true" that, if courts were allowed to find an agreement void *ab initio* under state law, a court would be permitted "to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable." *Id.* at 448-49. The court stated that this conundrum has been resolved in favor of the separate enforceability of arbitration provisions. *Id.* at 449.

Hence, pursuant to Supreme Court precedent, the arbitration provision in a contract may be enforceable even if an underlying contract may be void or voidable under state law. Ellis's claim that the contract in this case was void because Jeremy Franklin's Suzuki failed to deliver a title to the car to her was not for the circuit court to determine but was a claim for the arbitrator to decide.

Moreover, Jeremy Franklin's Suzuki argues that the arbitration agreement itself requires that any issue concerning the scope or arbitrability of Ellis's claim be submitted to an arbitrator. We agree.

As we previously noted, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Jackson*, 561 U.S. at 68-69. The arbitration provision in this case provides:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, your purchase or financing contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign your purchase or financing contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Agreement shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action.

This provision clearly delegates to the arbitrator the issue of the arbitrability of Ellis's claims in this case.

"[U]nless [the party opposing arbitration has] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any

9

challenge to the validity of the Agreement as a whole for the arbitrator."[7] *Id*. at 72. In other words, "[e]ven when a litigant has specifically challenged the validity of an agreement to arbitrate he must submit that challenge *to the arbitrator* unless he has lodged an objection to the particular line in the agreement that purports to assign such challenges to the arbitrator--the so-called 'delegation clause.'" *Id*. at 76 (Stevens, J., dissenting) (emphasis in original).

In *Jackson*, the arbitration agreement provided that "'the Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to, any claim that all or any part of this Agreement is void or voidable.'" *Id*. at 66. Jackson challenged the arbitration agreement as a whole as unconscionable but failed to specifically challenge the delegation provision. *Id*. at 73. The Supreme Court held that, absent a specific challenge to the delegation provision, any determination as to the validity of the arbitration agreement as a whole must be left to the arbitrator. *Id*. at 72.

In the case at bar, the arbitration agreement provides that any contract claim or dispute "including the interpretation and scope of this Arbitration Agreement and the arbitrability of the claim or dispute," "which arises out of or relates to" the "purchase or financing contract" "shall" at the election of either party "be resolved by neutral, binding arbitration and not by a court

---

[7]On the other hand, where a specific challenge is made to the validity of the delegation provision, that issue must be resolved by the court. For example, a specific claim that the delegation provision is unconscionable would need to be resolved by the court as a threshold matter. In this case, Ellis did not present a specific challenge to the delegation clause. Moreover, several federal cases have recognized that, even where delegation clauses clearly and unmistakably grant the power to decide arbitrability to the arbitrator, such provisions may be ignored by a court if the assertion of arbitrability is "wholly groundless." "[W]here the parties expressly delegate to the arbitrator the authority to decide the arbitrability of the claims related to the parties' arbitration agreement, this delegation applies only to claims that are at least *arguably* covered by the agreement." *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 511 (6th Cir. 2011) (emphasis in original). A "wholly groundless" inquiry allows the court to determine that it is "satisfied" under § 3 of the FAA that the issues are referable to arbitration under the agreement, "while also preventing a party from asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration." *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 n.5 (Fed. Cir. 2006) (applying 9th Circuit law).

10

action."  This provision clearly and explicitly states that the interpretation and scope of the arbitration agreement and the arbitrability of any claim or dispute is for an arbitrator to decide. Ellis has not challenged the delegation provision in this case.  When faced with a valid delegation clause, courts "must enforce it under [the FAA's] §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."  *Id*. at 72.

Because the arbitration agreement is severable from the contract as a whole and because Ellis did not assert specific challenges to the delegation provision in the arbitration agreement, the circuit court erred in denying Jeremy Franklin's Suzuki's motion to compel arbitration.  We, therefore, reverse the circuit court's ruling and remand to the circuit court for the entry of an order compelling arbitration[8] between Ellis and Jeremy Franklin's Suzuki and staying Ellis's suit against Jeremy Franklin's Suzuki pending a determination of the issues by an arbitrator.


/s/ JAMES EDWARD WELSH
James Edward Welsh, Presiding Judge


All concur.

---

[8]Again, by compelling arbitration, we necessarily mean that the arbitrator will, in the first instance, make the determination regarding the arbitrability of Ellis's claims.