WILLIAM H. PERRY AND MARION E. PERRY, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1018–64.   Filed November 18, 1966.

*William C. Myers, Jr.*, for the petitioners.
*Hugh C. McMahon*, for the respondent.

FORRESTER, *Judge:* The respondent determined deficiencies in the petitioners' Federal income taxes for the calendar years 1960 and 1961 in the respective amounts of $3,324.18 and $2,118.96. Some concessions have been made, and the only issue for our decision is whether the petitioners' deductible share of the net operating losses incurred by an electing small business corporation exceeds the amounts allowed by the respondent.

## FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference.

William H. Perry and Marion E. Perry, husband and wife, filed joint Federal income tax returns for the calendar years 1960 and 1961 with the district director of internal revenue, Kansas City, Mo. William H. Perry is hereafter referred to as the petitioner.

Cardinal Castings, Inc. (hereafter referred to as Cardinal Castings), was incorporated under the laws of the State of Missouri on March 11, 1960. During the years in issue, the petitioner owned 2,998 shares of capital stock in Cardinal Castings, his wife owned 1 share, and his son, David, owned 1 share. They owned all the issued and outstanding stock of the company. The petitioners paid $2,999 for their 2,999 shares of stock.

Cardinal Castings began business in March of 1960 and made a timely election to be taxed as a small business corporation within the purview of subchapter S, sections 1371, et seq., of the 1954 Code.[1] The election was filed on March 21, 1960.

Cardinal Castings, an accrual basis taxpayer, elected to file its Federal income tax returns on a fiscal year basis with the first taxable period ending October 31, 1960. For the period from March 30, 1960, through October 31, 1960, the company sustained a net operating loss of $9,294.30. For the next fiscal year, running from November 1, 1960, through October 31, 1961, the company incurred a net operating loss of $6,069.53.

At the end of its first fiscal year, on October 31, 1960, Cardinal Castings had various accounts payable outstanding and an overdraft in its checking account. These liabilities totaled $5,158.30. The petitioner contacted some of these creditors and guaranteed the payment by Cardinal Castings of at least some of these debts. Despite this guaranty, Cardinal Castings paid, with checks drawn on its own checking account, about $4,000 on these accounts during its next fiscal year.

At the end of its second fiscal year (Oct. 31, 1961), Cardinal Castings again had various accounts payable outstanding. These accounts totaled $3,943.82. Again, the petitioner contacted some of these creditors and guaranteed payment by Cardinal Castings either in part or in full. During the next fiscal year the company paid off these accounts completely, again with checks drawn on its own account.

On October 31, 1961, Cardinal Castings owed the petitioners rent on a building which it used in the amount of $1,900. Of this amount $1,200 was applicable to the fiscal year running from November 1, 1960, to October 31, 1961. The petitioners reported this $1,200 on

[1] All statutory references are to the Internal Revenue Code of 1954.

their Federal income tax return for 1961. The remaining $700 of the accrued rent represents the amount of the unpaid rent for the fiscal year ending October 31, 1960.[2]

At an undetermined time before October 31, 1961, the petitioners advanced $1,421.50 in cash to Cardinal Castings in exchange for the company's promissory note in the same amount dated August 26, 1961. This note was payable on demand to the petitioner and provided for interest at 6 percent payable annually.

Sometime after October 31, 1961, the petitioner executed and delivered to Cardinal Castings an instrument purporting to be a demand promissory note which had been predated to October 31, 1961. The instrument was drawn in the amount of $7,942.33 and was payable to the company's order. This transaction is reflected on the company's books by an entry dated October 31, 1962, in the notes receivable account. The balance sheet attached to the company's Federal income tax return for the fiscal year ending October 31, 1961, indicates that the company had no notes receivable on October 31, 1961.

Sometime after October 31, 1961, Cardinal Castings executed and delivered to the petitioner an instrument purporting to be a promissory note due on January 1, 1964, which also had been predated to October 31, 1961. This instrument was also drawn in the amount of $7,942.33 and was payable to the order of the petitioner. This transaction is also first reflected on the company's books by an entry dated October 31, 1962, in the notes payable account. The balance sheet attached to the company's Federal income tax return for the year ending October 31, 1961, indicates that the company had notes payable outstanding only in the amount of $1,421.50 at the end of said year.

The petitioners did not advance cash or other valuable consideration to Cardinal Castings prior to, or on October 31, 1961, in connection with the exchange of notes above described, nor were such notes in fact executed and delivered on or before October 31, 1961.

### FINDINGS OF ULTIMATE FACT

On October 31, 1960, the petitioners' adjusted basis in the capital stock of Cardinal Castings was their cost of $2,999, and their adjusted basis of the company's indebtedness to them was $700.

On October 31, 1961, the petitioners' adjusted basis in the company's capital stock was zero, and the adjusted basis of the company's indebtedness to them was $2,621.50.

---

[2] The respondent has stipulated that this $700 is includable in computing Cardinal Castings' indebtedness to the petitioners for 1960. The respondent overlooked this by inadvertence in his deficiency notice.

162

We are called upon to decide the allowable portion of a net operating loss properly deductible by a shareholder in an electing small business corporation. Specifically, the issue at hand is whether "the adjusted basis * * * of any indebtedness of the corporation to the shareholder" includes the amount of the company's accounts payable which have been personally guaranteed by the shareholder. Sec. 1374(c)(2)(B).

Section 1374 of the Code gives each shareholder of an electing small business corporation the right to deduct on his individual or joint Federal return an amount equal to his prorata share of the corporation's net operating loss. This deduction is subject to the important limitations that it may not exceed the shareholder's adjusted basis in the corporation's stock and the adjusted basis of any corporate indebtedness to him determined as of the close of the company's taxable year.

During the years in issue the petitioners owned 2,999 shares of stock in Cardinal Castings which cost them $2,999. During the period from March 11, 1960, through October 31, 1960, the petitioners did not advance money to Cardinal Castings, nor did they pay any of the company's various debts. The respondent has stipulated, however, that the company became indebted to the petitioners during this period for rent in the amount of $700.

For its first fiscal year Cardinal Castings had a net operating loss of $9,294.30. On their joint Federal return for the calendar year 1960 the petitioners claimed a deduction of $8,440.08 [3] as their prorata share of this net operating loss. The respondent now contends that the petitioners are entitled to a deduction of only $3,699 (their basis in the stock of $2,999 plus the unpaid rent of $700).

During the corporation's fiscal year ended October 31, 1961, the petitioners advanced $1,421.50 in cash to the company and received its promissory note in exchange. In addition the corporation owed the petitioners $1,200 for rent at the end of this fiscal year. During this year the petitioners did not pay any of the company's debts.

For its fiscal year ending October 31, 1961, Cardinal Castings had a net operating loss of $6,069.53. On their joint Federal income tax return for 1961, the petitioners claimed a deduction of $6,039.18 as their prorata share of such loss. In his statutory notice the respondent allowed the petitioners a deduction of only $2,621.50 (the debt of $1,421.50 plus the unpaid rent of $1,200).

The petitioners' theory of this case is that their basis in the "indebtedness of the corporation to [them]" includes the amount of cor-

---

[3] Mistakenly referred to as $8,435.86 in the statutory deficiency notice.

porate debts to third parties which they personally guaranteed. The respondent argues that the petitioners' potential liability as a guarantor of the company's debts is not the same as "an indebtedness of the corporation to [them]." We think that the plain wording of the statute, the general principles of guaranty law, and the adjudicated cases interpreting guaranty liability require a decision for the respondent.

Section 1374(c)(2),[4] provides that a shareholder's deductible portion of any electing small business company's net operating loss shall not exceed the sum of the adjusted basis of his stock in the company and "the adjusted basis * * * of any indebtedness of the corporation to the shareholder." The statutory language plainly refers to a debt of the corporation which runs to the shareholder. There is nothing in the statutory wording, nor the regulations, nor the committee reports which warrants an inference that a shareholder's contract of guaranty with corporate creditors is tantamount to an "indebtedness of the corporation to [him]."

A contract of guaranty has been defined, we think accurately, as "an undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another, and which binds the obligor to performance in the event of nonperformance by such other, the latter being bound to perform primarily." 24 Am. Jur., Guaranty, sec. 2, p. 873–874.

The law of Missouri recognizes and emphasizes the distinctness of the debtor's primary obligation and the guarantor's contingent and secondary liability. In *Four-Three-O-Six Duncan Corp.* v. *Security Trust Co.*, 372 S.W. 2d 16, 23 (Mo. 1963), the court said that in Missouri a "guaranty contract is by its very nature a separate, independent agreement 'which imposes different responsibilities than those imposed in the contract to which it is collateral.' *Kelly-Springfield Tire Co.* v. *Hamilton*, 230 Mo. App. 430, 91 S.W. 2d 193, 195 [1936]."

---

[4] SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS.

(c) DETERMINATION OF SHAREHOLDER'S PORTION.—

    \*        \*        \*        \*        \*        \*        \*

(2) LIMITATION.—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

    (A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and

    (B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).

The court then cited with approval a statement from American Jurisprudence that a guaranty contract "being a collateral engagement for the performance of an undertaking of another, imports the existence of two different obligations, one being that of the principal debtor and the other that of the guarantor." 24 Am. Jur., Guaranty, sec. 4, p. 875, quoted in *Four-Three-O-Six Duncan Corp.*, *supra* at 23.

The distinction between the primary liability of the debtor and the secondary, contingent liability of the guarantor is important for Federal income tax purposes. In holding that certain payments made by a guarantor after default by the principal debtor were deductible as bad debt losses rather than as losses from a transaction entered into for profit, the Supreme Court in *Putnam* v. *Commissioner*, 352 U.S. 82, 85, made an observation which is relevant here:

The familiar rule is that, *instanter* upon the payment by the guarantor of the debt, the debtor's obligation to the creditor *becomes* [emphasis supplied] an obligation to the guarantor, not a new debt, but, by subrogation, the result of the shift of the original debt from the creditor to the guarantor who steps into the creditors shoes. * * *

The *Putnam* case and cases of this Court hold that only *after* the guarantor performs on his contract of guaranty does the debtor's indebtedness to the creditor become an indebtedness to the guarantor. *Peter Stamos*, 22 T.C. 885 (1954); *Haywood P. Martin*, 38 T.C. 188 (1962); also cf. *J. J. Shea*, 36 T.C. 577 (1961), affirmed per curiam 327 F. 2d 1002 (C.A. 5, 1964).

The petitioners make a second argument on this issue to the effect that Cardinal Castings was indebted to them on October 31, 1961, in the amount of $7,942.33. The only evidence in support of this claimed debt are two promissory notes dated October 31, 1961, but the record shows that these notes were predated and exchanged by petitioner and Cardinal Castings sometime after that date.

The respondent indicated on opening statement that he did not believe that the documents in question were "in fact, notes, or that they were executed on the dates reflected thereon." The petitioner was present at the trial, but he did not take the stand to explain the circumstances surrounding the execution and delivery of the notes or even to aver that he did in fact advance money or other consideration to the company in exchange for the one in his favor. Accordingly, we draw the inference, unfavorable to the petitioner, that he has not sustained his burden of proving that these notes represent any indebtedness of the corporation to the petitioners.

*Decision will be entered under Rule 50.*