ALBERT D. DUKE and DORIS R. DUKE, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Duke v. Commissioner
Docket No. 3503-74.
United States Tax Court
T.C. Memo 1976-50; 1976 Tax Ct. Memo LEXIS 350; 35 T.C.M. (CCH) 229; T.C.M. (RIA) 760050; February 26, 1976, Filed James L. Tuohy, for the petitioners. Thomas L. Kummer and Robert Ruwe, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' *351 Federal income taxes: Year
Deficiency
1971
$1,450.00
1972
2,091.90
Total
$3,541.90
The sole issue for decision is whether petitioners may deduct their pro rata share of the net operating losses of an electing small business corporation incurred during 1971 and 1972. The answer turns on whether petitioner Albert Duke had an adjusted basis in any indebtedness of the corporation to him. FINDINGS OF FACT Petitioners are husband and wife and, at the time their petition was filed, maintained their legal residence at Indianapolis, Indiana. For the years in issue, petitioners filed timely Federal income tax returns on the calendar year basis, using the cash method of accounting. Albert Duke (hereinafter petitioner), is an engineer, specializing in computer systems and their application to the individual business needs of clients. In September 1965, petitioner was a 50 percent partner in an engineering sales partnership doing business under the name of Doron Engineering Co. In June 1966, petitioner and his partner, Gordon N. Swanstrom, incorporated their business under the name of Doron Engineering, Inc., with petitioner and Swanstrom being the sole shareholders. *352 As of June 30, 1966, petitioner's basis in his Doron stock was $2,255.77. On April 14, 1969, the name of Doron Engineering, Inc., was changed to Systems Engineering Associates, Inc., and in August of 1969, this name was shortened to SEA, Inc. (hereinafter SEA). At all relevant times, SEA has operated under a valid election under section 1372 [1]/ (sometimes herein the subchapter S election). As of January 8, 1970, petitioner owned 36 percent of SEA's 400 outstanding shares of stock. Petitioner's basis in his stock has been adjusted several times since the original incorporation of Doron Engineering, Inc., and the subsequent name changes of the corporation due to net operating losses and gains of SEA and various cash distributions to petitioner. For the years in issue, the petitioner's basis in his SEA stock had been completely exhausted for the purpose of deducting his pro rata share of the corporation's net operating losses. During 1969 through 1972, certain loans were negotiated at the Union State Bank of Carmel, Indiana and the Continental *353 Illinois National Bank & Trust Company of Chicago on behalf of SEA. The proceeds of these loans were paid directly by check to SEA or its predecessor corporation, Systems Engineering Associates, Inc. None of the loan proceeds were received by petitioner. The notes to the Union State Bank of Carmel were in all cases signed by petitioner as well as the other officer-shareholders of the corporation, both in their capacities as officers of SEA and as comakers. The Union State Bank of Carmel usually required shareholder-officers of closely held corporations to bind themselves personally, along with their companies, on small corporate loans. The bank was at all times aware that the principal loan balances exceeded SEA's net worth, and the personal liability of the individuals was necessary to properly secure the loans. The notes to the Continental Illinois National Bank and Trust Company of Chicago were signed in the name of SEA, followed by the names of its officer-shareholders. On its books and records, SEA and its predecessor corporation treated all loans from the Union State Bank of Carmel and the Continental Illinois National Bank & Trust Company of Chicago as obligations of the *354 corporation. The equity accounts of the corporation were not adjusted to reflect the loan proceeds as contributions of capital by petitioner or the other officer-shareholder-comakers. All principal and interest payments on the corporate loans were made by SEA and not petitioner or the other shareholders. Upon each payment on the notes, SEA would lower its liability accounts on its corporate accounting records. On their joint income tax returns for 1971 and 1972, petitioners deducted $11,113 and $9,536, respectively, as their pro rata share of SEA's net operating losses. Respondent disallowed these claimed deductions on the grounds that petitioner had no remaining basis in his SEA stock and that no indebtedness existed from SEA to petitioner which would support net operating loss deductions pursuant to section 1374. OPINION Pursuant to section 1374, a shareholder of an electing small business corporation may deduct from his gross income his pro rata share of the corporation's net operating losses. Such portion of the losses, however, is limited by section 1374(c) [2]/ to the sum of: (1) The adjusted basis at the close of the taxable year of the shareholder's stock in the corporation; *355 and (2) the adjusted basis of any indebtedness of the corporation to the shareholder. *356 Petitioners contend that the various notes made by SEA in favor of the Union State Bank and the Continental Illinois National Bank & Trust Company of Chicago which petitioner signed as comaker in effect constituted an indebtedness of SEA to them and thereby gave petitioners a basis against which to apply the corporation's net operating losses. We disagree. The evidence is unmistakably clear that, even though petitioner signed the notes as comaker, he was merely a guarantor thereof. As detailed in our Findings, SEA received the proceeds of the loans and the notes were always treated as SEA's obligations. None of the proceeds were treated as capital contributions to SEA, and all payments on the notes were made by SEA. In a long line of cases, this Court has held that a shareholder's guaranty of a corporate debt does not create an indebtedness from the corporation to the shareholder within the meaning of section 1374(c)(2)(B). Milton T. Raynor,50 T.C. 762, 770-771 (1968); Joe E. Borg,50 T.C. 257 (1968); William H. Perry,47 T.C. 159, 163 (1966), affd. 392 F.2d 458, 461 (8th Cir. 1968). See also Wheat v. United States,353 F. Supp. 720, 722 (S.D. Tex. 1973); *357 Neal v. United States,313 F. Supp. 393 (C.D. Cal. 1970). Only when the shareholder actually pays the debt on behalf of the corporation does a legally enforceable indebtedness arise between the shareholder and the corporation. Putnam v. Commissioner,352 U.S. 82, 85 (1956); William H. Perry,47 T.C. at 164; see also Wheat v. United States,supra at 722. It is clear, therefore, that the term "indebtedness" as used in section 1374(c) (2)(B) envisions an actual economic outlay by the shareholder beyond merely signing as a guarantor or comaker of a negotiable instrument. William H. Perry,54 T.C. 1293, 1296 (1970), affd. per order (8th Cir. May 12, 1971); see also Wheat v. United States,supra at 722; S. Rept. No. 1983, 85th Cong., 2d Sess. (1958), 1958-3 C.B. 922, 1141. In the instant case, petitioner has never been called upon to pay any of the notes which he and the corporation signed as comakers. Petitioners ask us simply to view the guaranty transactions as constructive loans from the banks to petitioner individually and, in turn, loans of those same funds *358 to the corporation. This view of the transactions, however, would distort the actualities. As stated above, the facts clearly show that the loans were made to the corporation and not petitioner. The corporation's books, as well as the banks' records, plainly show that the transactions were loans to the corporation. While it is true that the banks required petitioner's signature on the notes for better security, the mere possibility of being called upon in the future to satisfy the notes does not create the requisite indebtedness. Milton T. Raynor,supra at 770-771. Since the note guarantees did not constitute an indebtedness and petitioner's stock basis had previously been completely used for net operating losses, petitioners' deductions were correctly denied. It is true the renewal note to the Union State Bank of Carmel dated September 18, 1972, does not bear SEA's name as obligor, but, contrary to petitioners' argument, that note was not given by petitioner to satisfy SEA's liability. On the face of that note, the same as the other notes, petitioner's signature appears twice, once as "president" and once as comaker. Although the corporation's name does not *359 appear on the face of the note, its address does so appear. The only distinction between the September 18, 1972, note and all the previous corporate notes to the bank was the absence of SEA's name. We do not think the failure to type SEA's name on the note would have relieved SEA of liability on the note. It was given as a renewal of SEA's indebtedness, and it was signed by petitioner as president and by Thomas J. Hamilton as secretary. Indeed, the president of the Union State Bank of Carmel testified that although SEA's name did not appear on the face of the note, the bank still treated the loan as SEA's obligation, since the absence of SEA's name was merely an administrative oversight. We are, therefore, convinced that the September 18, 1972, renewal note was simply a continuation of SEA's existing loan obligations, and was not petitioner's individual obligation to the bank. Respondent's notice of deficiency also denied petitioners a deduction of $1,268 for employer business expenses. Petitioners have presented no evidence to refute respondent's determination, thereby failing to carry their burden of proof. Therefore, we must uphold respondent's position and deny the deduction. *360 Welch v. Helvering,290 U.S. 111 (1933). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect for the years in issue, unless otherwise noted.
2. / Sec. 1374(c) provides as follows: (c) Determination of Shareholder's Portion.-- (1) In General.--For purposes of this section, a shareholder's portion of the net operating loss of an electing small business corporation is his pro rata share of the corporation's net operating loss (computed as provided in section 172(c) * * * For purposes of this paragraph, a shareholder's pro rata share of the corporation's net operating loss is the sum of the portions of the corporation's daily net operating loss attributable on a pro rata basis to the shares held by him on each day of the taxable year. For purposes of the preceding sentence, the corporation's daily net operating loss is the corporation's net operating loss divided by the number of days in the taxable year. (2) Limitation.--A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of-- (A) the adjusted basis * * * of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation * * * and (B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation * * *↩