T.C. Memo. 2016-207

UNITED STATES TAX COURT

PHILIP JOSEPH FRANKLIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9097-13.                                    Filed November 14, 2016.

P filed untimely tax returns for 2007 and 2008 and failed to file tax returns for 2009 and 2010. R determined deficiencies in tax for all years. R made adjustments (among others) on the grounds that P omitted ordinary dividend income received from one of two of P's wholly owned S corporations, that P lacked sufficient bases to deduct passthrough losses from either of his S corporations, that P had gross income from unexplained bank deposits, and that P omitted discharge of indebtedness income. R also determined various additions to tax and an accuracy-related penalty.

1. <u>Held</u>: Adjustment for distribution of ordinary income is not sustained.

2. <u>Held</u>, <u>further</u>, P did have a sufficient basis in 2007 to deduct a claimed passthrough loss from one S corporation but did not have sufficient bases in 2008 to deduct claimed losses from either S corporation.

[*2]     3.  Held, further, P received in 2009 and 2010 gross income from unexplained bank deposits.

4.  Held, further, P omitted from his 2008 gross income discharge of indebtedness income.

5.  Held, further, R's determination of additions to tax and penalties are sustained, other than R's determination of failure-to-pay-timely additions to tax.


Philip Joseph Franklin, pro se.

William J. Gregg, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge:  Petitioner and Juliette Franklin made joint returns of income for their taxable (calendar) years 2007 and 2008.  Petitioner made no return of income for either 2009 or 2010.  Respondent determined deficiencies in tax and additions to tax and penalties for petitioner and Ms. Franklin for 2007 and 2008 and determined deficiencies in tax and additions to tax and penalties for petitioner for 2009 and 2010.  Ms. Franklin is not a party to these proceedings. Because we assume that petitioner is jointly and severally liable for any deficiencies in his and Ms. Franklin's 2007 and 2008 tax, see sec. 6013(d)(3), but

**[*3]** <u>see</u> sec. 6015, we will for ease of discussion disregard Ms. Franklin and speak as if only petitioner made the 2007 and 2008 returns.[1]  Respondent determined the following deficiencies in tax and the following additions to tax and penalties.

| | | | Additions to tax | | Penalty |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 | sec. 6662(a) |
| 2007 | $95,261 | $18,876 | --- | --- | $19,052 |
| 2008 | 15,626 | 658 | --- | --- | 3,125 |
| 2009 | 34,694 | 7,806 | To be computed | $831 | --- |
| 2010 | 129,572 | 29,154 | To be computed | 2,779 | --- |

Petitioner concedes certain of respondent's adjustments giving rise to the deficiencies in question.  He concedes that he omitted from his 2007 gross income gambling winnings of $1,200.  He concedes that he omitted from gross income wages of $39,096 and $16,140 received in 2009 and 2010, respectively.  He concedes that he omitted from his 2009 gross income a State tax refund of $6,129.  We accept those concessions and will not further discuss those adjustments.  Certain adjustments are merely computational and require no attention from us.  The issues remaining for decision are as follows.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all dollar amounts to the nearest dollar.

**[*4]**   (1)  Did petitioner omit from gross income interest of $688, $287, and $95 received in 2008, 2009, and 2010, respectively?

(2)  Did he omit from his 2010 gross income retirement account distributions of $227,559?

(3)  Did he omit from his 2007 gross income ordinary dividends of $218,342 received in that year?[2]

(4)  Did he overstate allowable passthrough S corporation losses by $343,939 and $294,801 for 2007 and 2008, respectively?

(5)  Did he understate gross receipts in the form of unexplained bank deposits of $76,174 and $82,798 for 2009 and 2010, respectively?

(6)  Did he omit from his 2008 gross income discharge of indebtedness income of $67,592?

(7)  Is he liable for the additions to tax and penalties?

Petitioner bears the burden of proof, see Rule 142(a), which he must satisfy by a preponderance of the evidence, see Merkel v. Commissioner, 109 T.C. 463, 476 (1997) ("The usual measure of persuasion required to prove a fact in this Court is 'preponderance of the evidence', * * * which means that the proponent

---

[2]Respondent concedes that the notice of deficiency that he issued to petitioner for 2007 erroneously reports the allegedly omitted dividends as $218,432.  We treat the correct amount as $218,342.

**[\*5]** must prove that the fact is more probable than not[.]"  (Citations omitted.)),

aff'd, 192 F.3d 844 (9th Cir. 1999).[3]

## FINDINGS OF FACT[4]

The parties have stipulated certain facts and the authenticity of certain documents.  The facts stipulated are so found, and documents stipulated are accepted as authentic.

Residence

When he filed the petition, petitioner was incarcerated at the Federal Correctional Institution--Schuylkill in Minersville, Pennsylvania.

---

[3]Petitioner has not raised the applicability of sec. 7491(a), which shifts the burden of proof to the Commissioner in certain situations.  We conclude that sec. 7491(a) does not apply here because petitioner has not produced any evidence that he has satisfied the preconditions for its application.

[4]At the outset, we note that at the conclusion of the trial, the Court set a schedule for opening and answering briefs.  Petitioner submitted neither an opening nor an answering brief, apparently content to rely on the arguments that he made at trial.  In pertinent part, Rule 151(e) provides that, in an answering brief, a party sets forth any objections, together with the reasons therefor, to any proposed findings of any other party.  Since petitioner did not submit an answering brief, we conclude that he has no objection to respondent's proposed findings of fact.  We therefore conclude that they are correct except to the extent that they are clearly inconsistent with other evidence in the record or contradicted by respondent's arguments.  See, e.g., Jonson v. Commissioner, 118 T.C. 106, 108 n.4 (2002), aff'd, 353 F.3d 1181 (10th Cir. 2003); Bland v. Commissioner, T.C. Memo. 2012-84, 2012 WL 967651, at \*1 n.3.

**[*6]** <u>Returns</u>

On June 19, 2009, petitioner filed his 2007 Form 1040, U.S. Individual Income Tax Return.

On June 22, 2009, petitioner filed his 2008 Form 1040. He had requested no extension of time to file his 2008 return.

Petitioner filed no Federal income tax return for either 2009 or 2010. No Federal income tax was withheld from his wages for either of those years. Nor, for either year, did he pay any estimated tax. Respondent prepared certificates of assessments, payments, and other specified matters stating that, for each of 2009 and 2010, respondent prepared a substitute for return (SFR).

<u>Interest Payments</u>

In determining the deficiencies in issue, respondent made positive adjustments to petitioner's gross income for interest received of $688, $287, and $95, for 2008, 2009, and 2010, respectively. At trial, petitioner conceded that (1) in 2008 he received from Wells Fargo Bank interest of $688, (2) in 2009 he received from the Internal Revenue Service (IRS) interest of $287, and (3) in 2010 he received from Wells Fargo Bank interest of $95. He did not concede that the interest payments constituted items of gross income. We accept petitioner's concession that he received the payments and will discuss their taxability <u>infra</u>.

[*7] Individual Retirement Account Distributions

In determining the 2010 deficiency in tax in issue, respondent made a positive adjustment to petitioner's gross income on account of distributions to him in 2010 of $227,559 from individual retirement accounts (IRAs).  At trial, petitioner conceded that he had received those distributions in 2010.  As with the interest payments, he did not concede that the distributions constituted items of gross income.  We accept petitioner's concession that he received the distributions and will discuss their taxability infra.

Franklin Drywall, Inc.

Franklin Drywall, Inc. (FDI), is an S corporation.[5]  FDI was incorporated on March 24, 1989, and elected S corporation status effective March 27, 1989.  On June 22, 2009, FDI, a calendar year taxpayer, made a return of income for 2007 on Form 1120S, U.S. Income Tax Return for an S Corporation.  It reported on that return that its business activity was "Construction/Contractor".  It checked a box on that return indicating that it was FDI's final return.  Petitioner owned all of the outstanding shares of FDI.  FDI had no accumulated earnings and profits.

---

[5]The term "S corporation" is defined in sec. 1361(a)(1).  In general, an S corporation has no Federal income tax liability, and its items of income, deduction, credit, and such are passed through to (i.e., taken into account by) its shareholders for Federal income tax purposes.  See secs. 1363(a), 1366(a).

[*8]   FDI reported on its 2007 Form 1120S an ordinary business loss of $501,448.  Respondent disallowed $458,296 of that claimed loss, allowing the remainder, $43,152.

FDI reported on Schedule L, Balance Sheet per Books, attached to its 2007 Form 1120S an item, "Loans to shareholders", with an opening balance of $218,342 and an end-of-year balance of zero.  In determining the 2007 deficiency in tax in issue, respondent made a positive adjustment of $218,342 to petitioner's reported 2007 gross income on the grounds that petitioner had received that amount as a loan from FDI and in 2007 FDI had discharged his obligation to make repayment.  Respondent treated the discharge as a constructive distribution to petitioner of $218,342.  Further, respondent treated the constructive distribution as an ordinary dividend received by petitioner.

FDI also reported on the Schedule L as items of shareholder equity "Capital stock" and "Additional paid-in capital" of $1,000 and $512,216, respectively.  It reported retained earnings of negative $1,264,038.

It reported on Schedule M-2, Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholder's Undistributed Taxable Income Previously Taxed, accumulated losses of $890,341 as of the beginning of 2007 and $1,390,880 as of year's end.

[*9] Petitioner reported on his 2007 Form 1040, Schedule E, Supplemental Income and Loss, Part II, Income or Loss From Partnerships and S Corporations, a passthrough loss from FDI of $343,939.[6] Respondent disallowed the deduction for all but $43,152 of that loss on the ground that petitioner's correct share of FDI's ordinary loss was no greater than $43,152. Respondent disallowed the deduction for the remaining $43,152 loss on the ground that petitioner had failed to show that he had any basis in FDI.

ACRO Business Finance Corp. (ACRO) was during 2007 a creditor of FDI's to which FDI was in default on indebtedness exceeding $1,788,416. Petitioner had guaranteed that indebtedness and, by letter dated April 23, 2007, ACRO demanded from him payment of that indebtedness. Petitioner testified that ACRO in 2007 seized and sold personal assets of his worth $496,000 and applied the proceeds in partial satisfaction of his guaranty. He provided the Court with a list purporting to itemize the assets seized and sold and showing their net value to be $496,000. He testified that, pursuant to the guaranty, he still owes ACRO $500,000.

---

[6]A copy of a 2007 Schedule K-1, Shareholder's Share of Income, Deductions, Credits, etc. (Form 1120S), issued by FDI to petitioner reports an ordinary business loss of $501,448. The record contains no explanation of why petitioner reported a passthrough loss from FDI of $343,939.

[*10] Petitioner reported on his 2008 Form 1040, Schedule E, a passthrough loss from FDI of $107,298. Respondent disallowed the deduction for that loss without explanation. On brief, respondent explains that he did so because FDI had ceased operations by 2008, and petitioner should not have claimed a deduction for any passthrough loss from FDI for 2008. The record contains no evidence of an FDI return for 2008 or that petitioner filed with respondent the statement required by section 6037(c)(2)(A) that FDI filed no 2008 return.

Franklin Construction Services, Inc.

Franklin Construction Services, Inc. (FCS), is an S corporation. In 2008, petitioner owned all of the outstanding shares of FCS. For its taxable (calendar) year 2008, FCS made a return of income on Form 1120S. FCS reported a loss for 2008 of $187,503. Petitioner reported on his 2008 Form 1040, Schedule E, a passthrough loss from FCS of $187,503. Respondent disallowed the deduction for that loss on the ground that petitioner lacked any basis in FCS.

Unexplained Bank Deposits

In determining the 2009 and 2010 deficiencies in tax in issue, respondent made positive adjustments to petitioner's gross income of $76,174 and $82,798 for those years, respectively, on account of unexplained deposits to petitioner's bank accounts that respondent believed to be deposits of unreported items of gross

[*11] income. Petitioner does not contest the fact of the deposits, and we find that they were made as claimed by respondent. At trial, respondent accepted petitioner's claim that four deposits that respondent included for 2009 should be disregarded as duplicative. Respondent agreed and conceded that the amount of unexplained deposits for 2009 was no more than $59,053. We accept that concession. Petitioner did not dispute as duplicative any of the other deposits respondent took into account.

Discharge of Indebtedness

Respondent made a positive adjustment of $67,592 to petitioner's 2008 gross income on the ground that petitioner was discharged of that amount of indebtedness in 2008 without repaying any portion of the amount. Petitioner testified at trial, and we find, that in 2008 he was indebted to North Star Bank for $67,592, which the bank discharged in 2008. Petitioner also testified that he was insolvent in 2007.

OPINION

I.     Interest Income

Petitioner received from Wells Fargo Bank interest of $688 and $95 in 2008 and 2010, respectively, and in 2009 he received from the IRS an interest payment of $287. Interest is specifically included as an item of gross income. Sec.

**[*12]** 61(a)(4). We will sustain respondent's adjustments increasing petitioner's gross income on account of the amounts stated.

## II.  IRA Distributions

Petitioner received IRA distributions of $227,559 in 2010. Gross income includes amounts paid from IRAs. Sec. 408(d)(1). We will sustain respondent's adjustment increasing petitioner's gross income on account of the IRA distributions.

## III.  Ordinary Dividend

In determining a deficiency in petitioner's 2007 tax, respondent increased petitioner's 2007 gross income by $218,342 because he considered FDI to have constructively distributed that amount to petitioner in 2007 when, before it ceased doing business in that year, it failed to collect from him $218,342 that its books showed petitioner as owing to it at the beginning of 2007. Surprisingly, in his pretrial memorandum and on brief, respondent contradicts a critical portion of his explanation for the adjustment; i.e., that petitioner was indebted to FDI at the beginning of 2007 in the amount of $218,342. Although in his brief he proposes as a fact that we should find that petitioner owed $218,342 to FDI on January 1, 2007, he argues the following in support of his adjustment increasing petitioner's

[*13] 2007 gross income by $218,342 on account of his receipt of an ordinary

dividend from FDI:

> Petitioner was the controlling shareholder of FDI because he was the sole shareholder of FDI.  If a controlling shareholder diverts corporate property to his own use, the diverted funds are generally treated as constructive dividends for tax purposes.  * * *  Loans to a shareholder may be viewed as disguised dividends unless the shareholder can prove that the loans are bona fide.
>
> As between petitioner and FDI, there is no evidence of a written note, that interest (at a reasonable rate or not) was charged, that regular payments of principal and interest were scheduled, and that the loans were repaid.  Instead, the loans to shareholder account on FDI's records was an open account device that suggests a bona fide debt did not exist with petitioner. [Emphasis added.]

That is almost verbatim the argument that respondent makes in his pretrial

memorandum.

We have no brief from petitioner, but at trial we received into evidence from

him two typewritten letters he sent to respondent's counsel, one dated August 19,

2014, and the second dated October 21, 2014 (August 19 letter and October 21

letter, respectively), addressing the adjustments that respondent had made.  We

will treat those letters as additional testimony by petitioner.  Petitioner does not

deny that he had received $218,342 recorded as the 2007 opening balance of the

loans-to-shareholder account.  Nor does he deny that he did not repay that amount

to FDI before it ceased doing business in 2007.  He argues in the October 21 letter,

**[*14]** however, that no tax is due because the $218,342 represents amounts taxed and paid to him by FDI in prior years but recorded as loans on its books on instructions from ACRO and from his accountant.

Respondent's argument on brief raises principally an issue of timing and not one of character (i.e., whether the distribution constituted a dividend). We say that because, unless an S corporation has accumulated earnings and profits, no distribution of property (including money) by the corporation to a shareholder with respect to his stock will constitute a dividend within the meaning of section 316(a). Sec. 1368(b) and (c). Instead, distributions by an S corporation with no accumulated earnings and profits to a shareholder with respect to his stock are excluded from the shareholder's gross income to the extent that the distribution does not exceed the adjusted basis of the shareholder's stock. See sec. 1368(b)(1). Any excess is treated as gain from the sale or exchange of property. See sec. 1368(b)(2).

An S corporation may have accumulated earnings and profits from a variety of sources, including (1) as a carryover from years in which it was a C corporation, before it became as S corporation, see Cameron v. Commissioner, 105 T.C. 380, 384 (1995), aff'd sub nom. Broadaway v. Commissioner, 111 F.3d 593 (8th Cir. 1997), and (2) as the result of certain reorganizations and the like, see sec.

[*15] 1371(c)(2); see also James S. Eustice, Joel D. Kuntz, and John A. Bogdanski, Federal Income Taxation of S Corporations, para. 8.04[8][b], at 8-74 (5th ed. 2015). FDI was incorporated on March 24, 1989, and elected S corporation status effective March 27, 1989. Given the three-day period between its incorporation and S election, it is likely that FDI never accumulated earnings and profits as a C corporation. Moreover, although the record is silent, from the nature of its business as construction/contractor it also seems likely that it was never involved in reorganizations or other transactions referred to in section 1371(c)(2). See Briggs v. Commissioner, T.C. Memo. 2000-380, 2000 WL 1847580, at *4 n.9. We find, accordingly, that FDI had no accumulated earnings and profits.

Still, having determined that no distribution to petitioner with respect to the $218,342 shown as a loan to shareholder on FDI's 2007 books could have been a dividend within the meaning of section 316(a), we must determine whether the elimination of that item from FDI's books by the end of 2007 gave rise to a constructive distribution to petitioner during 2007. We conclude that it did not. Respondent's motivation in arguing that no bona fide debt existed is not apparent to us, but that is respondent's argument, and it is not seriously contradicted by petitioner's testimony that the $218,342 was booked as a loan on the instructions of a creditor and of his accountant. If petitioner received $218,342 from FDI with

[*16] no obligation to repay FDI, then the payment may well have constituted a distribution to him with respect to his stock. To the extent the distribution exceeded in amount his adjusted basis in his FDI stock, he realized a gain on the sale or exchange of property. See sec. 1368(b)(2). Because the $218,342 is recorded on the 2007 books of FDI as the opening balance of FDI's loans-to-shareholders account, we assume that the associated payment (or payments) was (or were) made in a year before 2007, and we so find. Since no year before 2007 is at issue, we need not concern ourselves with whether petitioner realized a gain on account of the payment in a prior year. We will redetermine petitioner's 2007 deficiency in tax without taking into account respondent's $218,342 adjustment to his gross income for "ordinary dividends".

IV. Passthrough Losses

A. Introduction

Petitioner claimed deductions for passthrough S corporation losses from FDI of $343,939 and $107,298 for 2007 and 2008, respectively, and, for 2008, he claimed a deduction for a passthrough loss of $187,503 from FCS. Respondent disallowed the deduction for all but $43,152 of the 2007 loss on the grounds that petitioner's correct share of FDI's ordinary loss was no greater than $43,152. Additionally, he disallowed the deduction for the remaining $43,142 loss on the

[*17] ground that petitioner had failed to show that he had any basis in FDI. He argues that petitioner is entitled to no passthrough loss from FDI for 2008 because it had ceased operations by 2008. He disallowed petitioner's claimed deduction for a 2008 passthrough loss from FCS on the ground that petitioner had failed to show that he had any basis in FCS.

B.     2007 FDI Loss

At trial, respondent called no witnesses but did cross-examine petitioner (the only individual testifying). He inquired of petitioner concerning his basis in FDI but made no inquiry concerning FDI's justification for, or its computation of, the $501,448 loss that it reported on its 2007 Form 1120S. Nor did he inquire as to how petitioner determined the $343,939 loss that he reported on his 2007 Form 1040. Moreover, he made no objection to petitioner's introducing into evidence the August 19 letter, in which petitioner argues that FDI's 2007 expenses were consistent with its expenses for previous years and should be allowed except for $32,387 of nondeductible fines and penalties.

On brief, respondent proposes that, with respect to the $343,939 loss, we make the following two findings of fact.

[*18]        Petitioner claimed a passthrough loss of $343,939 from FDI.

Respondent determined that the passthrough loss of $343,939 was not allowable because petitioner did not show that he had any basis in FDI that would permit a passthrough loss to be claimed on his individual return. [Paragraph numbers and citations of the record omitted.]

Those proposed findings are mirrored by respondent's statement of the issue in his pretrial memorandum: "The claimed loss was disallowed because petitioner did not show that he had sufficient basis in FDI stock to claim the passthrough loss." Respondent proposes no finding reflecting that the deduction for the claimed loss should be disallowed for reasons other than inadequacy of basis.

Because of respondent's neglect at trial of the issue of the amount of FDI's 2007 ordinary loss and his choice on brief to argue only that petitioner lacked an adequate basis to deduct for 2007 a $343,939 passthrough loss from FDI, we treat him as having conceded that FDI incurred the $501,448 loss that FDI reported on its return. See, e.g., Theodore v. Commissioner, 38 T.C. 1011, 1041 (1962); Bell v. Commissioner, T.C. Memo. 1990-171 ("[W]here an issue is in controversy and one of the parties fails to address that issue on brief * * * [,] we have held that the failure to address the issue on brief is tantamount to a concession of the issue."). Moreover, whatever slight evidence there is tips the scales under a preponderance-of-the-evidence standard in petitioner's favor, i.e., that his 2007

[*19] passthrough loss from FDI was at least the amount he claimed, $343,939. We do not sustain respondent's adjustment reducing FDI's reported 2007 ordinary loss to $43,152.

We still must determine whether petitioner has proved he had any basis in FDI that would sustain his claimed deduction for the $343,939 passthrough loss.

Section 1366(a) requires that an S corporation shareholder, when calculating his taxable income for the year, take into account his pro rata share of the S corporation's income, losses, deductions, and credits. His deductions and losses, however, cannot exceed the sum of (1) his adjusted basis in his stock in the S corporation and (2) his adjusted basis in the S corporation's indebtedness to him. Sec. 1366(d)(1)(A) and (B). Any losses that are disallowed may be carried forward indefinitely and claimed when and to the extent that the shareholder increases his basis in the S corporation. See sec. 1366(d)(2).

Petitioner provided no direct evidence of his basis in either his FDI or FDC stock or either company's indebtedness to him. Respondent argues that FDI's sizable losses, as evidenced by the negative accumulated adjustments account balance that it reported on its 2007 Form 1120S, are evidence that petitioner had an insufficient basis to claim a deduction for any passthrough loss from FDI for 2007. Implicitly, respondent argues that the $513,216 combined capital stock and

[*20] paid-in capital shown on FDI's Schedule L balance sheet are historical amounts representing stock basis previously absorbed by losses passed through to petitioner.

Petitioner makes no argument that in 2007 he had any remaining basis in his FDI stock attributable to amounts he paid for that stock. He argues, however, that he had a sufficient basis resulting from his guaranty of FDI's indebtedness to ACRO to deduct the loss he reported on his 2007 return. He claims a basis of at least $996,000 resulting from ACRO's seizure and sale in 2007 of $496,000 of his personal property and his remaining guaranty obligation of $500,000. We have nothing but petitioner's testimony, corroborated only by his self-prepared list, to support his claim of ACRO's seizure and sale of his property in 2007 and the application of the proceeds to FDI's indebtedness pursuant to petitioner's obligation as a guarantor. Nevertheless, we have in evidence ACRO's demand for payment, and petitioner was credible in testifying that ACRO seized and sold his assets. Respondent offered no evidence to rebut petitioner's testimony. On the basis of his testimony, applying a preponderance-of-the-evidence standard, we find that, in 2007, ACRO seized and sold petitioner's property and applied the proceeds, $496,000, to FDI's indebtedness to it pursuant to petitioner's obligation as a guarantor. That gave rise to an indebtedness from FDI to petitioner in an

[*21] equal amount. See Putnam v. Commissioner, 352 U.S. 82, 85 (1946) ("The familiar rule is that, instanter upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor[.]"); Perry v. Commissioner, 47 T.C. 159, 164 (1966), aff'd, 392 F.2d 458 (8th Cir. 1968). Petitioner's basis in that indebtedness increased the limitation on the amount of FDI's losses and deductions that he could take into account. See sec. 1366(d)(1)(B); see also Rev. Rul. 70-50, 1970-1 C.B. 178 (1970) ("Payment by a shareholder-guarantor of a loan made by a bank to an electing small business corporation is treated as an indebtedness of the corporation to the shareholder for purposes of computing his portion of a net operating loss.").[7] That is not so with respect to the remaining $500,000 that petitioner claims he guaranteed. As we said in Raynor v. Commissioner, 50 T.C. 762, 770-771 (1968): "No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation." See also Borg v. Commissioner, 50 T.C. 257 (1968). Petitioner may, therefore, deduct the $343,939 passthrough loss from FDI that he reported on his 2007 Form 1040.

_____

[7]Although entitled to consideration, revenue rulings do not have the force of law. Dixon v. United States, 381 U.S. 68, 73 (1965); see, e.g., Murray v. Commissioner, T.C. Memo. 2012-213, 2012 WL 3030366, at *2 n.3.

**[\*22]** Indeed, it may be that, as indicated by FDI's negative accumulated adjustments account, petitioner could for 2007 deduct an increased passthrough loss from FDI. See sec. 1366(d)(2). Petitioner, however, has made no such claim, and the issue is not before us to decide.[8]

    C.    2008 FDI Loss

Petitioner reported on his 2008 Form 1040 a $107,298 passthrough loss from FDI. FDI reported on its 2007 Form 1120S that that was its final return. There is no evidence that FDI filed a 2008 return or incurred any loss for that year. Petitioner's 2008 Form 1040 is not evidence of the truth of the facts stated on it. See, e.g., Lawinger v. Commissioner, 103 T.C. 428, 438 (1994); Hale v. Commissioner, T.C. Memo. 2010-229, 2010 WL 4120880, at \*2. Petitioner has failed to carry his burden of proving that FDI incurred any loss for 2008. We sustain respondent's adjustment denying petitioner a deduction for a passthrough loss from FDI for 2008.

---

[8]Our Rules do not preclude petitioner from moving at this late date to amend his pleading, see Rule 41(a), to claim a reduced deficiency or, possibly, a refund on account of an increased 2007 passthrough loss from FDI. Rule 41(b), in particular, allows amendments to conform to the evidence. Our holding that the issue of an increased loss is not now before us to decide is without prejudice to any motion to amend the petition that petitioner might make.

[*23] D.     2008 FCS Loss

Respondent denied the deduction for a $187,503 passthrough loss from FCS that petitioner claimed for 2008 on the ground that petitioner had failed to show any basis in FCS stock or indebtedness for 2008.  Petitioner claims that he had a basis in 2008 on account of his contribution to FCS of a distribution received from an IRA and on account of $500,000 that his wife's family had invested in the company.  Petitioner received IRA distributions of $227,559 in 2010, which, even if he contributed it to FCS, would not serve to increase his basis for 2008.  There is no evidence of  IRA distributions other than those in 2010.  There is, therefore, nothing to corroborate a $500,000 investment in 2008.  At trial, petitioner referred to a bank statement showing such an investment, but no bank statement is in evidence.  Nor does petitioner explain why an investment by his wife's family would increase his basis in FCS stock or indebtedness.  Petitioner has failed to show any basis in FCS for 2008 that would support his deduction of any passthrough loss from the corporation.  We will sustain respondent's adjustment denying petitioner any deduction for a passthrough loss from FCS for 2008.

V.     Unexplained Deposits

Respondent argues that unexplained deposits of $59,053 and $82,798 into petitioner's bank accounts in 2009 and 2010, respectively, represent items of gross

[*24] income that petitioner failed to report. "A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income." Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); see also Mistlebauer v. Commissioner, T.C. Memo. 2012-186, 2012 WL 2608410, at *3. At trial, petitioner stated that he should have disputed more than the four deposits that he claimed were duplicative (and that respondent conceded were), but he did not. Petitioner has failed to prove that $59,053 and $82,798 of unexplained deposits into his bank accounts in 2009 and 2010, respectively, did not represent items of unreported gross income. We will, therefore, sustain respondent's adjustments to that extent.

VI.    Discharge of Indebtedness

In 2008, North Star Bank forgave $67,592 of indebtedness owed to it by petitioner. Section 61(a)(12) includes as an item of gross income "[i]ncome from discharge of indebtedness". Section 108(a)(1)(B) excludes from gross income discharge of indebtedness income if the discharge occurs while the taxpayer is insolvent. Petitioner testified that he was insolvent in 2007. He did not testify, nor will we assume, that he was insolvent in 2008. Petitioner advances no other defense to respondent's adjustment, increasing his 2008 gross income by $67,592

**[*25]** on account of North Star Bank's forgiveness of that amount of his indebtedness to it. We will sustain the adjustment.

## VII. Additions to Tax and Penalties

### A. Introduction

The Commissioner bears the burden of production with respect to the liability of any individual for any penalty or addition to tax. Sec. 7491(c). His burden is to show that imposition of the penalty or addition to tax is appropriate. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). If he carries that burden, the taxpayer must come forward with evidence sufficient to persuade us that imposition of the penalty or addition to tax is incorrect (e.g., because of the existence of reasonable cause and the absence of willful neglect). See id. at 447.

### B. Section 6651(a)(1) Additions to Tax for Failure To File Timely Return

Section 6651(a)(1) imposes an addition to tax for failure to file a timely tax return. The addition equals 5% of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25% for returns more than four months delinquent. Id. Section 6651(a)(2) imposes an addition to tax for failure to pay timely the amount shown as tax on any return. The amount of the addition

**[*26]** is equal to 0.5% of the tax for each month or fraction thereof during which the tax remains unpaid, up to a maximum addition of 25%. Those additions to tax do not apply if the failure to file timely and to pay timely is due to reasonable cause and not to willful neglect. Sec. 6651(a)(1) and (2).

Respondent determined delinquent filing additions for all of the years in issue. Petitioner filed no returns for 2009 and 2010. He filed his 2007 and 2008 returns after the April 15, 2008 and 2009, due dates, respectively, for those returns. See sec. 6072(a). Respondent has carried his burden of producing evidence that imposition of the delinquent filing addition is appropriate for each year in issue. Petitioner produced no evidence of (1) reasonable cause for the delinquencies and (2) lack of willful neglect. We will sustain the section 6651(a)(1) additions to tax after taking account of adjustments made to reflect the correct deficiencies in tax.

C. Section 6651(a)(2) Additions to Tax for Failure To Timely Pay Tax

Section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount of tax shown on a return, unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect. The addition is calculated as 0.5% of the amount shown as tax on the return but not paid, with an additional 0.5% for each month or fraction thereof during which the failure to pay continues,

**[*27]** up to a maximum of 25%.  See id.  To carry his burden that imposition of a section 6651(a)(2) addition to tax is appropriate, the Commissioner must introduce evidence that the tax was shown on a Federal income tax return.  Cabirac v. Commissioner, 120 T.C. 163, 170-174 (2003), aff'd without published opinion, 94 A.F.T.R.2d (RIA) 2004-5490 (3d Cir. 2004).  When a taxpayer has not filed a return, the section 6651(a)(2) addition to tax may not be imposed unless the Secretary has prepared an SFR that meets the requirements of section 6020(b).[9] Wheeler v. Commissioner, 127 T.C. 200, 208-209 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); Estes v. Commissioner, T.C. Memo. 2014-9, at *14, aff'd, 577 F. App'x 205 (4th Cir. 2014).

---

[9]Sec. 6020(b) provides:

SEC. 6020(b).  Execution of Return by Secretary.--

(1) Authority of Secretary to execute return.--If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

(2) Status of returns.--Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

**[*28]** We have addressed on several occasions what constitutes an SFR. See, e.g., Wheeler v. Commissioner, 127 T.C. at 208-210 (discussing Phillips v. Commissioner, 86 T.C. 433, 437-438 (1986), aff'd in part, rev'd in part on another issue, 851 F.2d 1492 (D.C. Cir. 1988)). In Wheeler v. Commissioner, 127 T.C. at 210, we noted that in "each of the cases discussed above, the record included the SFRs that the Commissioner contended met the requirements of section 6020(b) and/or stipulations that the SFRs had been filed." In Wheeler, the record contained neither. We stated: "The only evidence regarding the SFR is a cryptic and summary reference to a 'Substitute for Return' contained in Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for * * * [the year in question]". Id. That evidence, we held, was insufficient to show that the Commissioner had made an SFR satisfying the requirements of section 6020(b). Id. We added, where the taxpayer had not filed a return, "the Commissioner must introduce evidence that an SFR satisfying the requirements of section 6020(b) was made." Id. We ended: "Because the record does not contain evidence that petitioner failed to pay tax shown on a return for 2003, we conclude that respondent has failed to satisfy his burden of production under section 7491(c) with respect to the section 6651(a)(2) addition to tax." Id.

[*29] Respondent determined section 6651(a)(2) additions to tax for 2009 and 2010, years for which petitioner filed no returns, in amounts to be determined (because, at the time the notice of deficiency for 2009 and 2010 was issued, the time during which the penalty accrues had not expired). On brief, respondent argues as follows to convince us that imposition of the failure to pay additions is appropriate: "At trial, respondent produced evidence of petitioner's * * * non-payment which petitioner did not dispute. Accordingly, respondent produced sufficient evidence to show that the * * * late payment additions to tax were appropriate." Respondent did not introduce into evidence any SFRs, nor have the parties stipulated that valid SFRs were made. And while we do have in evidence Forms 4340 for 2009 and 2010, each of which states "substitute for return" and lists a corresponding date, the transcripts do not establish that the SFRs met the requirements of section 6020(b). See Wheeler v. Commissioner, 127 T.C. at 210; Gardner v. Commissioner, T.C. Memo. 2013-67, at *24. We find that respondent has not satisfied his burden of production under section 7491(c), and accordingly petitioner is not liable for the additions to tax under section 6651(a)(2) for 2009 and 2010. See, e.g., Gardner v. Commissioner, at *24-*25.

**[*30]** D.    Section 6654 Addition to Tax for Failure To Pay Estimated Tax

Section 6654(a) provides for an addition to tax in case of any underpayment of estimated tax.[10]  Respondent determined section 6654(a) additions to tax for 2009 and 2010.  Petitioner did not file a return for either year, did not have Federal income tax withheld from his wages, and made no estimated tax payment for either year.  Respondent has satisfied his burden of production to show that section 6654(a) additions to tax are appropriate.  Petitioner has failed to show the applicability of any exception.  We will sustain the section 6654(a) additions to tax after taking account of adjustments made to reflect the correct deficiencies in tax.

E.    Section 6662 Accuracy-Related Penalty

Section 6662(a) and (b)(1) provides for an accuracy-related penalty of 20% of the portion of an underpayment of tax attributable to negligence or disregard of rules and regulations.  Section 6662(a) and (b)(2) provides for the same penalty on the portion of an underpayment of tax attributable to "[a]ny substantial understatement of income tax."  Section 6662(d)(2)(A) defines the term

---

[10]We have jurisdiction over the sec. 6654(a) additions to tax in this case because petitioner did not file income tax returns for 2009 and 2010.  See sec. 6665(b)(2); Heisey v. Commissioner, T.C. Memo. 2002-41, 2002 WL 207108, at *3 n.6, aff'd, 59 F. App'x 233 (9th Cir. 2003).

[*31] "understatement" as the excess of the tax required to be shown on the return over the amount shown on the return as filed. In the case of an individual, an understatement of income tax is "substantial" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). An understatement of income tax is reduced, however, by the portion attributable to the treatment of an item for which the taxpayer had "substantial authority". Sec. 6662(d)(2)(B)(i). Section 6664(c)(1) provides an exception to the imposition of the section 6662(a) accuracy-related penalty if it is shown that there was a reasonable cause for the underpayment and the taxpayer acted in good faith.

The deficiencies that respondent determined for petitioner's 2009 and 2010 taxable years far exceeded 10% of the total corrected tax liabilities shown on the notice of deficiency (which amounts, in turn, are each greater than $5,000). It appears unlikely that the concessions respondent made and the adjustments herein will reduce petitioner's understatements of income tax below the substantiality threshold.[11] Accordingly, we need not consider whether petitioner was negligent under section 6662(b)(1).

---

[11]Petitioner makes no argument that his deduction of the amounts respondent disallowed or any of the positions he conceded were supported by substantial authority.

[*32] For petitioner to avoid the imposition of the accuracy-related penalty, he would need to show that he acted with reasonable cause and in good faith. Petitioner has not offered any such evidence. Moreover, with respect to the portion of petitioner's 2008 underpayment of tax due to his claiming a deduction for a $107,298 passthrough loss from FDI, which respondent disallowed and which disallowance we sustain, we also have the facts that FDI filed no return for 2008 and that petitioner did not file with the Secretary notice of FDI's failure to file, which petitioner was required by section 6037(c)(2)(A) to file. Section 6037(c)(5) suggests that such failure is to be taken into account for penalty purposes, presumably in considering the taxpayer's reasonable cause and good faith. Consequently, we will sustain the section 6662(a) accuracy-related penalty after taking account of adjustments made to reflect the correct deficiencies in tax.

VIII. Conclusion

To reflect the foregoing and concessions by the parties,

Decision will be entered under Rule 155.